Lawrence J. Semenza, III, Esq., Bar No. 7174
Email: ljs@semenzarickard.com
Katie L. Cannata, Esq., Bar No. 14848
Email: klc@semenzarickard.com
SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone:  (702) 835-6803
Facsimile:   (702) 920-8669
*Attorneys for Defendant MGM Resorts International*
*& Defendant/Counterclaimant MGM Grand Hotel, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DWIGHT MANLEY,<br><br>Plaintiff,<br><br>v.<br><br>MGM RESORTS INTERNATIONAL;<br>MGM GRAND HOTEL, LLC,<br><br>Defendants.<br>―――――――――――――――――<br>MGM GRAND HOTEL, LLC, a Nevada<br>limited liability company,<br><br>Counterclaimant,<br><br>v.<br><br>DWIGHT MANLEY, an individual,<br><br>Counter-Defendant. | Case No.   2:22-cv-01906-MMD-DJA<br><br>**DEFENDANTS MGM GRAND HOTEL, LLC & MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PORTIONS OF PLAINTIFF DWIGHT MANLEY'S THIRD AMENDED COMPLAINT [ECF No. 64]** |

Defendant MGM Resorts International ("MGMRI") and Defendant/Counterclaimant MGM Grand Hotel, LLC ("MGM") (together, "Defendants") hereby move to dismiss portions of Plaintiff Dwight Manley's ("Manley") Third Amended Complaint (ECF No. 64.) (the "Motion"). Specifically, Defendants move to dismiss Manley's unviable claims for Negligence Per Se and Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing.

1

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

This Motion is made pursuant to Fed. R. Civ. P. 12(b)(6), the pleadings on file with the Court, the attached Memorandum of Points and Authorities and any additional argument of counsel the Court may consider.

DATED this 4th day of April, 2024.

SEMENZA RICKARD LAW

*/s/ Lawrence J. Semenza, III*
Lawrence J. Semenza, III, Esq., Bar No. 7174
Katie L. Cannata, Esq., Bar No. 14848
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

*Attorneys for Defendant MGM Resorts International & Defendant/Counterclaimant MGM Grand Hotel, LLC*

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   BACKGROUND

#### A.   Factual Background

Manley was a gambling patron of MGM's casino.  (ECF No. 32, 14:4.)  During his visits to MGM's casino, Manley would often gamble on credit.  (*Id.*)  In December 2021, Manley, his girlfriend and a few friends traveled to Las Vegas so that Manley could gamble and enter a poker tournament being held at MGM's property.  (ECF No. 64, ¶¶ 25-26.)

While gambling in the MGM Mansion high limit salon on December 10, 2021, Manley requested and executed two (2) credit instruments in favor of MGM: Instrument No. 782928177 in the amount of $2,000,000.00 and Instrument No. 782929189 in the amount of $1,000,000.00.  (ECF No. 32, 14:5.)  Manley was thereby given the cash equivalent of $3,000,000.00 in gambling chips.  (*Id.*)

In addition to the credit instruments, Manley requested and executed the following Marker Limit Increase Request Forms:

a.   Marker Limit Increase Request No. 1, which increased his credit line to $2,000,000.00;

b.   Marker Limit Increase Request No. 2, which increased his credit line to $3,000,000.00; and

c.   Marker Limit Increase Request No. 3, which increased his credit line to $3,500,000.00.

(*Id.* at 15:6.)

While gambling, Manley consumed a number of  alcoholic beverages over approximately three hours.  During his play, Manley apparently became excited by a hand he had been delt and proceeded to shatter an ashtray on a nearby table. (*See* ECF No. 64, ¶ 35.)  Manley accuses MGM of purportedly doing "nothing to stop Plaintiff from further gaming play or to otherwise check on his well-being despite [Vanessa Reboton] expressly commenting upon his 'erratic' behavior," *i.e.* his shattering of an ashtray.  (*Id.* at ¶ 39.)

Manley further alleges upon leaving the blackjack tables, he "was so disoriented that he could not stand or walk without assistance."  (*Id.* at ¶ 50.) The following day, on December 11,

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

2021, Manley contacted his casino host, Vanessa Reboton, alleging that his drink had been "spiked" the previous afternoon. (*Id.* at ¶ 53.) Specifically, Manley alleges that he was "drugged" with ketamine on December 10, 2021. (*Id.* at ¶ 59.)

Manley and his guests, however, continued their stay at MGM's Mansion through December 12, 2021. (ECF No. 32, 15:7-8.) During this time, Manley continued to gamble in the MGM Mansion high limit salon. (*Id.*) At the end of his stay, Manley had $560,000.00 in gambling chips deposited at a casino cage, which was applied as a partial payment to his $1,000,000.00 credit instrument with MGM. (*Id.* at 15:9.)

After Manley's December 2021 trip, MGM did not receive payment for the $2,440,000.00 remaining balance of the credit instruments he executed in favor of MGM. (*Id.* at 15:10.) MGM employees and/or representatives made attempts to resolve payment of the outstanding amount of the credit instruments, but were ultimately unsuccessful. (ECF No. 32, 15:11.)

As such, on or about March 23, 2022, MGM presented Instrument No. 782928177 in the amount of $2,000,000.00 for payment by Manley's bank. (*Id.* at 15:12.)

To date, Manley owes MGM the outstanding balance of Instrument No. 782929189, totaling $440,000.00. (*Id.* at 15:14.)

### B.    Pertinent Procedural Background

On December 20, 2023, Manley filed a Motion for Leave to file a Third Amended Complaint. (ECF No 55.) Specifically, Manley moved to allege three new causes of action against Defendants: Res Ipsa Loquitur, Negligence Per Se and Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing (hereinafter, "Tortious Breach"). (*Id.*)

On January 3, 2024, Defendants filed an Opposition to Manley's Motion for Leave. (ECF No. 58.) Among other things, Defendants argued that Manley's proposed claim for Negligence Per Se could not be premised on any regulation and/or statute pertaining to the service of alcohol, given this Court's prior finding that Defendants had "no affirmative duty to stop serving Manley alcohol once he had become visibly 'erratic.'" (*Id; see also* ECF No. 28, 13:12-15.). Defendants further argued that Manley did not have a special relationship with MGM for

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

purposes of his Tortious Breach claim.  (ECF No. 58.)  Manley filed a Reply in support of his Motion for Leave on January 10, 2024.[1]  (ECF No. 59.)

On March 18, 2024, the Court issued an Order granting Manley's Motion for Leave. (ECF No. 63.)  In doing so, the Court noted that the futility of Manley's claims for Negligence Per Se and Tortious Breach would be "better developed through a motion to dismiss."  (*Id.*)

On March 21, 2024, Manley filed his TAC against Defendants. (ECF No. 64.)  For the reasons discussed below, Manley's fatally flawed claims for Negligence Per Se and Tortious Breach must be dismissed.

## II.     STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), a cause of action may be dismissed for failure to state a claim upon which relief may be granted.  Dismissal for failure to state a claim is a question of law, *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 641 (9th Cir. 1989), and is appropriate when a "plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990) (quoting *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).  While detailed factual allegations are not required, the complaint must set at least forth "more than an unadorned, the-defendant-unlawfully harmed-me accusation," *Iqbal*, 129 S. Ct. at 1949, and may not merely state "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Twombly*, 550 U.S. at 555.   Indeed, a plaintiff must demonstrate more than just the "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

---

[1] In his Reply, Manley conceded that res ipsa loquitur is not a standalone claim for relief, and therefore, withdrew it from his proposed TAC.  (*See* ECF No. 59.)

As such, the Court must engage in a "common sense," "context-specific" examination of the pleading to determine whether a complaint states a plausible claim for relief. *Id* at 1950; *see also Twombly*, 550 U.S. at 557, 570.  The facts alleged must "raise a right to relief above the speculative level and the complaint must contain enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.  Where the well-pleaded facts set forth in the complaint do not permit a court to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief, and the claims in the complaint must be dismissed. *See id*. at 555; *Neitzke v. Wiliams*, 490 U.S. 319, 327 (1989).

For the reasons set forth below, Manley does not have viable claims for Negligence Per Se or Tortious Breach against Defendants.  Both claims must be dismissed.

**III.    ARGUMENT**

    **A.    <u>The Third Amended Complaint Fails to State a Viable Claim for Negligence Per Se</u>**

Negligence per se creates a presumption of negligence. The claim arises "when a duty is created by statute. A civil statute's violation establishes the duty and breach elements of negligence when the injured party is in the class of persons whom the statute is intended to protect and the injury is of the type against which the statute is intended to protect." *Goggin v. Enter. Leasing Co.-W., LLC*, 324 F. Supp. 3d 1179, 1183 (D. Nev. 2018) (quoting *Sanchez ex. rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 828, 221 P.3d 1276, 1283 (2009)); *see also Sercu v. Lab'y Corp. of Am.*, 788 F. Supp. 2d 1197, 1200 (D. Nev. 2011) ("[T]o state a claim for negligence per se, a plaintiff must establish that she belongs to the class of persons that the statute was designed to protect and that the defendant violated the statute causing plaintiff injury.") (citing *Anderson v. Baltrusaitis*, 113 Nev. 963, 944 P.2d 797, 799 (1997)).

Whether a particular statute establishes a standard of care in a negligence action is a question of law. *Vega v. E. Courtyard Assocs.*, 117 Nev. 436, 24 P.3d 219, 221 (2001). However, the enactment of a statute or regulation "may merely prohibit certain conduct, and contain no provision for any liability at all. In such cases the initial question is whether the legislation or regulation is to be given any effect in a civil suit. Since the legislation has not so provided, the

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

court is under no compulsion to accept it as defining any standard of conduct for purposes of a tort action." Restatement (Second) of Torts § 286 (1965); *see also Mazzeo v. Gibbons*, 649 F. Supp. 2d 1182, 1200 (D. Nev. 2009) (stating that in the absence of legislative intent to impose civil liability, violation of a statute is not negligence per se).

Manley's TAC alleges that "[t]he law in Nevada prohibits holders of casino gaming licenses, including MGM, from permitting persons who are visibly impaired by alcohol or any other drug to participate in gaming activity." (ECF No. 64, ¶ 115.)  Manley further alleges that "[s]uch gaming licensees, including MGM, are also prohibited from serving complimentary intoxicating beverages in a casino area to persons who are visibly impaired by alcohol or any other drugs." (*Id.*)  In support of his Negligence Per Se claim, Manley cites to various Nevada gaming regulations and statutes, as well as portions of the Clark County Code.

As discussed below, however, none of the statutes or regulations cited in the TAC can serve as the basis of a negligence per se claim against Defendants.  Accordingly, the claim must be dismissed in its entirety.

> **1.** ***Manley Cannot Premise His Negligence Per Se Claim on Administrative Codes and Regulations Concerning the Sale and/or Furnishing of Alcohol***

Manley partially premises his Negligence Per Se claim on Clark County Codes 8.20.300, 8.20.465 and Nevada Gam. Reg. 5.011, each of which address the sale and/or furnishing of alcohol to purportedly intoxicated persons.  Specifically, Clark County Code 8.20.300 states that it "is unlawful for any licensee under the provisions of this chapter, or any of his servants or employees, to sell, serve or give away alcoholic liquor to any intoxicated person." Clark County Code 8.20.465 further states that "[i]t is the affirmative duty of each holder of an alcoholic liquor license to strictly enforce all the provisions of this code and state statutes in the licensed establishment."[2]

---

[2] On their face, neither of the Clark County Codes provide for (1) a private right of action and/or (2) civil liability.  In fact, liquor licensees are only subject to potential "disciplinary action" by the Clark County Liquor and Gaming Licensing Board for certain code violations, which further confirms that the administrative codes cited by Manley do not provide for a private civil remedy. *See* Clark County Code 8.20.570.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

Similarly, Nevada Gam. Reg. 5.011 states that the following may be "unsuitable methods of operation" for gaming licensees: (1) permitting a person who is visibly impaired by alcohol or any other drug to participate in a gaming activity, and/or (2) complimentary service of intoxicating beverages in the casino area to a person who is visibly impaired by alcohol or any other drug. *See* Nev. Gam. Reg. 5.011(1)(b)-(c).

This Court, however, has *already* determined that Defendants had "***no affirmative duty to stop serving Manley alcohol once he had become visibly 'erratic.***'" (ECF No. 28, 13:12-15.) In reaching the foregoing finding, the Court relied upon well settled Nevada law, which states that "commercial liquor vendors, including hotel proprietors, ***cannot be held liable for damages related to any injuries caused by the intoxicated patron, which are sustained by either the intoxicated patron*** or a third party." *Rodriguez v. Primadonna Co., LLC*, 125 Nev. 578, 585, 216 P.3d 793, 798 (2009); *Hinegardner v. Marcor Resorts, L.P.V.*, 108 Nev. 1091, 1093, 844 P.2d 800, 802 (1992) ("At common law, courts refused to recognize a cause of action arising out of the sale or furnishing of intoxicating beverages . . . Nevada subscribes to the common law rule."); *Mehta v. Victoria Partners*, No. 221CV01493CDSVCF, 2023 WL 205758, at \*3 (D. Nev. Jan. 17, 2023) (stating that even if plaintiff's allegation that he was overserved alcohol was true, hotel could not be held liable for injuries caused or sustained by his intoxication); *see also* NRS 41.1305(1) ("A person who serves, sells or otherwise furnishes an alcoholic beverage to another person who is 21 years of age or older ***is not liable in a civil action for any damages caused by the person to whom the alcoholic beverage was served***, sold or furnished as a result of the consumption of the alcoholic beverage.") (Emphasis added.)

Considering the Court's prior ruling, as well as the authorities cited above, neither Clark County Codes 8.20.300, 8.20.465 nor Nev. Gam. Reg. 5.011[3] can serve as the basis for Manley's Negligence Per Se claim against Defendants. *See Hamm v. Carson City Nugget, Inc.*, 85 Nev. 99, 102, 450 P.2d 358, 360 (1969) (finding that Nevada criminal statute prohibiting the sale of

---

[3] As discussed below, Mandly's reliance on Nev. Gam. Reg. 5.011 is also flawed in the sense that Nevada Gaming Regulations do not provide for a private right of action and/or a civil remedy ***outside*** of the administrative process set forth in NRS Chapter 463 and Nev. Gam. Reg. 7-7A.

liquor to an intoxicated person "does not impose civil liability upon one in charge of a saloon or bar, ***nor is such a violation negligence per se.***") (Emphasis added.); *Davies v. Butler*, 95 Nev. 763, 777, 602 P.2d 605, 614 (1979) (finding that the trial court correctly rejected appellant's request for the jury to be instructed that defendants' violation of a Reno municipal ordinance, prohibiting the sale or furnishing of alcoholic beverages to an intoxicated person, would constitute negligence as a matter of law.); *Yoscovitch v. Wasson*, 98 Nev. 250, 251, 645 P.2d 975, 976 (1982) (concluding that violation of a penal statute and Reno Municipal Code regulating the sale of intoxicating liquor does not give rise to civil liability); *Snyder v. Viani*, 110 Nev. 1339, 1342, 885 P.2d 610, 612 (1994) (finding that, without a legislative mandate to the contrary, violation of a penal statute prohibiting the sale of alcohol to an underage person is not negligence per se).

### 2. *Manley Is Also Prohibited from Premising His Negligence Per Se Claim on Various Regulations and Statutes Relating to Gaming Activities*

In addition to Nev. Gam. Reg. 5.011, the TAC cites to NRS 463.0129[4] and Nev. Gam. Reg. 5.040[5]. NRS 463.0129 states, in pertinent part, the following:

1. The Legislature hereby finds, and declares to be the public policy of this state, that:

(a) The gaming industry is vitally important to the economy of the State and the general welfare of the inhabitants.

(b) The continued growth and success of gaming is dependent upon public confidence and trust that licensed gaming and the manufacture, sale and distribution of gaming devices and associated equipment are conducted honestly and competitively, that establishments which hold restricted and nonrestricted licenses where gaming is conducted and where gambling devices are operated do not unduly impact the quality of life enjoyed by residents of the surrounding neighborhoods, that the rights of the creditors of licensees are protected and that gaming is free from criminal and corruptive elements.

(c) Public confidence and trust can only be maintained by strict regulation of all persons, locations, practices, associations and activities related to the operation of licensed gaming establishments and the

---

[4] The TAC misidentifies this statute as "NRS 430.0129."  (ECF No. 64, ¶ 116.)

[5] The TAC misidentifies this regulation as Nevada Gaming Regulation 5.40. (ECF No. 64, ¶ 117.)

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

manufacture, sale or distribution of gaming devices and associated equipment.

Moreover, Nev. Gam. Reg. 5.040 states as follows:

> A gaming license is a revocable privilege, and no holder thereof shall be deemed to have acquired any vested rights therein or thereunder. The burden of proving his qualification to hold any license rests at all times with the licensee. The board is charged by law with the duty of observing the conduct of all licensees to the end that all licensees shall not be held by unqualified or disqualified persons or unsuitable persons or persons whose operations are conducted in any unsuitable manner.

NRS 463.0129 and Nev. Gam. Reg. 5.040 clearly pertain to Nevada's public policy concerning licensed gaming establishments and the qualifications to obtain a gaming license.[6] They do not, however, provide for a private right of action or a means of enforcement outside of administrative channels, *i.e.* via the Nevada Gaming Control Board and/or Commission.[7]  In fact, Manley acknowledges that the Nevada Legislature has "vested in ***the Nevada Gaming Commission*** full power and authority to limit, condition, restrict, revoke or suspend any license, or fine any person licensed."  (ECF No. 64, ¶ 117) (emphasis added.)  Because neither NRS 463.0129 nor Nev. Gam. Reg. 5.040 contemplate private civil liability, they cannot serve as the basis for Manley's Negligence Per Se claim.  *See Fleeger v. Bell*, 23 F. App'x 741, 743 (9th Cir. 2001) (stating that violations of Nevada's gaming regulations are enforced through administrative channels, not private causes of action).

The same is true of Nev. Gam. Reg. 5.011.  This regulation is clearly titled "Grounds for disciplinary action."  The acts and/or omissions identified Nev. Gam. Reg. 5.011 subsections (b) and (c)[8] are only grounds for potential "***disciplinary action by the Board and the Commission*** in accordance with the Nevada Gaming Control Act and the regulations of the Commission."  *See*

---

[6] Indeed, because Nev. Gam. Reg. 5.040 strictly pertains to the Nevada Gaming Control Board's duty to ensure that licensees are qualified to hold a gaming license, it has absolutely ***no*** application to this matter.

[7] In addition, Manley does not belong to the "class of persons" NRS 463.0129 and Nev. Gam. Reg. 5.040 were designed to protect.  In fact, neither address a protected class of person at all.  Instead, NRS 463.0129 and Nev. Gam. Reg. 5.040 are designed to protect the reputation and integrity of the state's ***gaming industry***, not individual patrons.

[8] *See* supra, pg. 7:5-9.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

Nev. Gam. Reg. 5.011(1) (emphasis added.)  In other words, Nev. Gam. Reg. 5.011 similarly does *not* provide patrons with a private right of action and/or civil remedy.

Moreover, because Nevada's gaming regulations only permit "disciplinary actions" against casinos, they do not establish an applicable standard of care in a negligence action.  *See Glenn v. Imperial Palace of Mississippi*, L.L.C., 575 F. App'x 475 (5th Cir. 2014) (dismissing a negligence per se claim premised on a gaming regulation, given that the regulation "only provides for possible disciplinary action for providing alcohol to a 'visibly intoxicated' person."); *Price v. Sinnott*, 85 Nev. 600, 605, 460 P.2d 837, 839–40 (1969), *aff'd sub nom. Price v. First Nat'l Bank of Nevada*, 90 Nev. 5, 517 P.2d 1006 (1974) (disagreeing that "a violation of an administrative regulation is negligence per se, since it lacks the force and effect of a substantive legislative enactment."); *see also e.g., Union Pac. R.R. Co. v. Winecup Ranch, LLC*, No. 317CV00477LRHCLB, 2020 WL 7125918, at *21 (D. Nev. Dec. 4, 2020) (stating that proof of a deviation from an administrative regulation could only be evidence of negligence, but not negligence per se); 57A Am. Jur. 2d Negligence § 670 ("Violation of a general duty clause is not negligence per se when there is no expression of legislative intent that the clause become a basis for the imposition of civil liability."); 57A Am. Jur. 2d Negligence § 736 ("The availability of the negligence per se rule does not mean that it is applied obdurately to the violation of every administrative rule or regulation; neither does the mere fact that an administrative agency promulgates a rule or regulation mean that the courts must accept it as standard for civil liability.")[9]  Accordingly, Manley cannot premise his Negligence Per Se claim on any of the foregoing Nevada gaming regulations or statutes as a matter of law.

Considering the foregoing, Manley's claim for Negligence Per Se is fatally flawed and must be dismissed.[10]

---

[9] In fact, courts have found that casinos do not owe patron's any legal duty to prevent them from gambling, even while intoxicated.  *Hakimoglu v. Trump Taj Mahal Assocs.*, 876 F. Supp. 625, 627 (D.N.J. 1994), aff'd, 70 F.3d 291 (3d Cir. 1995) (holding that a casino has no legal duty to prevent intoxicated gambler from continuing to gamble).

[10] Alternatively, Manley's proposed Negligence Per Se claim is duplicative of his Negligence claim. Both of these claims are centered upon Manley's allegation that he was permitted to gamble while purportedly acting "erratic" and/or "refusing to take any action" after observing Manley acting "erratically."  (*See* ECF

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

**B.** **Manley Does Not Have a Viable Claim for Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing Against Defendants**

Under Nevada law, breach of the implied covenant of good faith and fair dealing gives rise to a tort when a special relationship exists between the parties. *Ins. Co. of the West v. Gibson Tile Co., Inc.*, 122 Nev. 455, 134 P.3d 698, 702 (2006). Specifically, the tort of breach of the implied covenant of good faith and fair dealing requires a special element of reliance or fiduciary duty, and is limited to "rare and exceptional cases." *K Mart Corp. v. Ponsock*, 103 Nev. 39, 49, 732 P.2d 1364, 1370 (1987); *A.C. Shaw Construction v. Washoe County*, 105 Nev. 913, 915, 784 P.2d 9, 10 (1989).

A special relationship is characterized by elements of public interest, adhesion, reliance, and fiduciary responsibility, which is why tort liability has only been found in a narrow set of cases. *See Tumbleweed Corp. v. C & F Aviation, Inc.*, No. 307CV00126BESVPC, 2008 WL 11399562, at *4 (D. Nev. Feb. 8, 2008); *Stricker v. Nev. System of Higher Education*, 2007 WL 2460036 (D. Nev. 2007); *compare Larson v. Homecomings Fin.*, LLC, 680 F. Supp. 2d 1230, 1235 (D. Nev. 2009) (citing *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 883–84 (9th Cir. 2007))(stating that a special relationship does not exist between borrowers and lenders); *Ilani v. Abraham*, No. 217CV00692APGPAL, 2017 WL 2870076, at *3 (D. Nev. July 5, 2017), *judgment vacated in part on reconsideration*, No. 217CV00692APGPAL, 2018 WL 3232830 (D. Nev. Mar. 13, 2018) ("The fact that one party has more experience or expertise than another does not create a fiduciary relationship. Otherwise, nearly every commercial or consumer transaction would create fiduciary duties. Nevada law requires more.")

///

No. 64, ¶¶ 76-77, 115-121.) *See* M.M. v. Lafayette Sch. Dist., 681 F.3d 1082, 1091 (9th Cir. 2012) ("It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims."). Furthermore, "[a]s recently as 2011, the Nevada Supreme Court has noted that negligence and negligence per se are in reality only one cause of action . . . [n]egligence per se is only a method of establishing the duty and breach elements of a negligence claim." *Garland v. Las Vegas Metro. Police Dep't, No.* 2:12-CV-00147 GMN, 2013 WL 1195647, at *5 (D. Nev. Mar. 21, 2013) (internal quotations omitted); see also *Cervantes v. Health Plan of Nev., Inc.*, 127 Nev. 789, 793 n.4, 263 P.3d 261, 264 n.4 (2011) (providing that a plaintiff who relies on one set of allegations cannot plead both negligence and negligence per se, as the negligence per se doctrine is simply a method of establishing the duty and breach elements of a negligence claim).

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

The "implied covenant tort is not available to parties of an ordinary commercial transaction where the parties deal at arms' length." *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 955 (9th Cir.2002); *Silver State Broad., LLC v. Crown Castle MU, LLC*, No. 2:18-cv 00734, 2018 WL 6606064, at *3 (D. Nev. Dec. 17, 2018) (stating that a "straightforward vendor vendee relationship, or an association characterized by routine, arms-length dealings will not suffice to establish a special relationship.") (Internal quotations omitted.)

Manley fails to allege a special relationship between himself and Defendants for purposes of his Tortious Breach claim. As confirmed by the TAC, Manley's premises this claim upon his "long relationship" with MGM as a gambler. (ECF No. 64, ¶¶ 107-110.) To illustrate, the TAC alleges that "[f]rom the long relationship between Plaintiff and MGM and MGM's manifest commitment to the tenets of Responsible Gaming, there was a special element of reliance between Plaintiff and MGM where MGM was in an entrusted position." (*Id.* at ¶ 108.) Manley further alleges "MGM owed a duty of good faith and fair dealing to Plaintiff arising from the agreements in the form of the three Markers Plaintiff executed on December 10, 2021," and that "MGM's conduct was unfaithful to the purpose of the Markers and inconsistent with Plaintiff's justified expectations." (*Id.* at ¶¶ 107, 110.)

Manley's relationship with MGM as a gambler, however long that relationship has been, does not give rise to a special element of reliance or a fiduciary duty. Indeed, under Manley's theory of his "special relationship" with MGM, MGM would presumably have a duty to prevent Manley from making poor bets and/or decisions during his game play. That obviously was not – and could not have been – the case. Instead, Manley had a consumer relationship with MGM.

For instance, Manley would (in his own self-interest) request credit to gamble at MGM's casino. MGM, also acting in its own self-interest, would determine whether to extend the requested amount of credit to Manley. As such, the relationship between MGM and Manley is not fiduciary in nature at all. When it comes to the extension of credit, or gambling in general, MGM is not bound to act for Manley's benefit.

Furthermore, Manley reliance upon "the tenets of Responsible Gambling" for purposes of alleging a special relationship is equally flawed. Like all other gaming licensees, MGM

13

promotes responsible gambling. This does not, however, give rise to a special relationship between MGM and its patrons. Additionally, any purported "tenants of Responsible Gambling" do not create a legal duty owed to Manley (or any other patron for that matter) by Defendants.[11] If they did, MGM would be required to exclude from its casinos any and all patrons who may make poor gambling decisions to their own detriment. Such a scenario would be absurd.

For these reasons, the TAC fails to allege a legally cognizable special relationship between the parties or a duty owed by Defendants. As such, Manely's claim for Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing must be dismissed.

## IV.    CONCLUSION

Based upon the foregoing, Defendants respectfully request that the Court dismiss Manley's unviable claims for Negligence Per Se and Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing.

DATED this 4th day of April, 2024.

SEMENZA RICKARD LAW

*/s/ Lawrence J. Semenza, III*
Lawrence J. Semenza, III, Esq., Bar No. 7174
Katie L. Cannata, Esq., Bar No. 14848
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

*Attorneys for Defendant MGM Resorts International & Defendant/Counterclaimant MGM Grand Hotel, LLC*

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

---

[11] Nev. Gam. Reg. 5.170 addresses responsible gaming. Subsection (3) of the regulation states that licensees shall " implement procedures and training for all employees who directly interact with gaming patrons in gaming areas." The regulation continues, however, to state that "[t]his subsection ***shall not be construed to require employees of licensees to identify problem gamblers.***" Nev. Gam. Reg. 5.170(3) (emphasis added.) Moreover, Nev. Gam. Reg. 5.170(6) expressly states that the failure to establish a responsible gaming program is only "grounds for ***disciplinary action***" (*i.e.* with the Nevada Gaming Control Board and/or Commission). The foregoing further confirms that "tenants of responsible gaming" do not create a special relationship between a licensee and patron. Further, because Nev. Gam. Reg. 5.170(6) only contemplates potential (and administrative) disciplinary action, it would not create a private right of action and/or civil liability for an alleged violation. Therefore, the "tenants of responsible gaming" do not create a duty owed to patrons by licensees that could be breached for purposes of a tortious breach claim.

14

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

**<u>CERTIFICATE OF SERVICE</u>**

I am employed by the law firm of Semenza Rickard Law in Clark County, Nevada.  I am over the age of 18 and not a party to this action.  The business address is 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145.

I hereby certify that on the 4th day of April, 2024, I served the document(s), described as:

**DEFENDANTS MGM GRAND HOTEL, LLC & MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PORTIONS OF PLAINTIFF DWIGHT MANLEY'S THIRD AMENDED COMPLAINT [ECF No. 64]**

☒  by sending  ☐ an original ☒ a true copy and correct copy:

☒  a.  via **CM/ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

Paul R. Hejmanowski, Esq., paul@prhlawllc.com
Charles H. McCrea, Esq., charles@prhlawllc.com
*Attorneys for Dwight Manley*

☐  b.  **BY U.S. MAIL.** I deposited such envelope in the mail at Las Vegas, Nevada. The envelope(s) were mailed with postage thereon fully prepaid. I am readily familiar with Semenza Rickard Law's practice of collection and processing correspondence for mailing. Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at Las Vegas, Nevada in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

☐  c.  **BY PERSONAL SERVICE.**

☐  d.  **BY DIRECT EMAIL.**

☐  e.  **BY FACSIMILE TRANSMISSION.**

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Angie Barreras*
An Employee of Semenza Rickard Law