Lawrence J. Semenza, III, Esq., Bar No. 7174
Email: ljs@semenzarickard.com
Katie L. Cannata, Esq., Bar No. 14848
Email: klc@semenzarickard.com
SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone:  (702) 835-6803
Facsimile:   (702) 920-8669

*Attorneys for Defendant MGM Resorts International
& Defendant/Counterclaimant MGM Grand Hotel, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DWIGHT MANLEY,<br><br>           Plaintiff,<br><br>v.<br><br>MGM RESORTS INTERNATIONAL; MGM GRAND HOTEL, LLC,<br><br>           Defendants.<br><hr>MGM GRAND HOTEL, LLC, a Nevada limited liability company,<br><br>           Counterclaimant,<br><br>v.<br><br>DWIGHT MANLEY, an individual,<br><br>           Counter-Defendant. | Case No.   2:22-cv-01906-MMD-EJY<br><br>**DEFENDANT MGM RESORTS INTERNATIONAL AND DEFENDANT/COUNTERCLAIMANT MGM GRAND HOTEL, LLC'S MOTION FOR SUMMARY JUDGMENT** |

Defendant MGM Resorts International ("MGMRI") and Defendant/Counterclaimant MGM Grand Hotel, LLC ("MGM Grand") (together, "Defendants"), hereby move for summary judgment on each of Plaintiff Dwight Manley's ("Manley's") claims, as well as on each of MGM Grand's Counterclaims (the "Motion").

1

This Motion is brought pursuant to FRCP 56 and Local Rule 56-1, the following Memorandum of Points and Authorities, the attached exhibits, the papers and pleadings on file with the Court and any oral argument the Court wishes to entertain.

DATED this 14th day of May 2025.

SEMENZA RICKARD LAW

*/s/ Lawrence J. Semenza, III*
Lawrence J. Semenza, III, Esq., Bar No. 7174
Katie L. Cannata, Esq., Bar No. 14848
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

*Attorneys for Defendant MGM Resorts International & Defendant/Counterclaimant MGM Grand Hotel, LLC*

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

**MEMORANDUM OF POINTS AND AUTHORITES**

## I.   INTRODUCTION

At its core, this case involves a casino marker dispute.  After requesting and gambling $3 million in credit, Manley has refused to repay the remaining balance of the credit instruments he executed in favor of MGM Grand on December 10, 2021.  In an effort to avoid his repayment obligations, Manley filed the instant lawsuit asserting a host of baseless claims against Defendants, all of which are premised upon his allegation of being drugged while at MGM Grand's property on December 10, 2021.  Given that there is no evidence to establish Manley's allegations in this case, his attempt to skirt responsibility for his outstanding gambling debt must stop here.

First, there is no genuine issue of material fact that Manley requested and executed two credit instruments from MGM Grand on December 10, 2021: one in the amount of $2 million, and the other in the amount of $1 million.  Manley similarly does not dispute that he received the value of those credit instruments in the form of gambling chips, which he used to play blackjack at the MGM Mansion high limit salon and ultimately lost.  Despite the fact that Manley subsequently paid $560,000.00 toward his debt, and MGM successfully deposited the $2 million credit instrument with Manley's bank, a balance of $440,000.00 remains unpaid.  By virtue of Manley's refusal to remit the outstanding amount, he has breached his contracts with MGM Grand.  As such, MGM Grand is entitled to summary judgment on its contract-based counterclaims.

Next, Manley's purported incapacity to contract defense does not prevent the entry of summary judgment on MGM Grand's counterclaims.  While Manley insists that he lacked capacity to enter into the credit instruments at issue, he failed to promptly disaffirm those contracts with MGM Grand.  Instead, Manley *ratified* the credit instruments as a matter of law by, among other things, paying $560,000.00 toward his $3 million balance.

3

Summary judgment must also be entered in favor of Defendants on Manley's claims.[1] As discussed in detail below, Manley's ratification of the credit instruments is fatal to his claims for Declaratory Relief and Breach of the Implied Covenant of Good Faith and Fair Dealing. The same is true of Manley's Deceptive Trade Practices claim. In fact, Manley's Deceptive Trade Practices claim fails for additional reasons, including Manley's inability to establish legally cognizable damages under NRS 41.600.

Moreover, Defendants are entitled to summary judgment on Manley's Negligence claim. Among other reasons, Manley cannot establish that Defendants breached any duty of care on December 10, 2021. There is simply no evidence that Manley's drink was "spiked" with Ketamine by an MGM Grand bartender – or frankly – "spiked" at all. Indeed, even if Manley was purportedly drugged (he was not), the "spiking" of his drink with Ketamine and/or Ketamine contaminated ingredients ***was not*** foreseeable to Defendants.

Finally, because the credit instruments Manley executed in favor of MGM Grand are valid and enforceable contracts (which he ratified), his Unjust Enrichment claim fails as a matter of law.

For these reasons, and those discussed below, the Court should grant Defendants' Motion in its entirety.

## II.     STATEMENT OF UNDISPUTED FACTS

### A.     <u>Manley Arrives at MGM Grand and Gambles in the Mansion's High Limit Salon</u>

Manley is a former gambling patron of MGM Grand's casino, who identifies himself as an "experienced gambler." (Declaration of Jennifer McEwin, ¶ 2, attached hereto as Exhibit 1.; Portions of Dwight Manley Deposition Transcript, 27:5-8, a true and correct copy is attached hereto as Exhibit 2.) During his visits to MGM Grand's casino, Manley would often gamble on credit. (Ex. 2, 31:6-15.) In December 2021, Manley, his then girlfriend (now, wife) and three friends traveled to Las Vegas so that Manley could gamble at MGM Grand's property and enter a poker tournament. (*Id.* at 88:1-89:1.) Prior to his arrival, Manley requested a $2,000,000.00

---

[1] Manley has not brought a breach of contract claim against Defendants.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

corporate credit line from his host, Vanessa Reboton, for purposes of his trip. (*Id*. at 69:14-70-5; Portions of Vanessa Reboton Deposition Transcript, 70:7-13, 77:1-13, a true and correct copy is attached hereto as Exhibit 3.)  The $2,000,000.00 corporate credit line was approved by MGM Resorts President of Casino Marketing, Justin Manacher, prior to Manley's arrival on December 10, 2021.   (Portion of Justin Manacher Deposition Transcript, 51:5-7, a true and correct copy is attached hereto as Exhibit 4.)

Manley's entire trip was comped by MGM Grand, including his accommodations, flights, entertainment, food and beverage.[2]   (Ex. 2, 100:6-24.)   Specifically, on December 10, 2021, Manley and his party were flown from California to Las Vegas on MGM's corporate jet and driven to the property in a private limo.  Manley arrived at the MGM Mansion at approximately 1:30 p.m. that afternoon.  (*Id.* at 85:9-11.)  Immediately after checking into his room, Manley went to the MGM Mansion high limit salon at approximately 1:50 p.m. (CONFIDENTIAL Video Surveillance Footage, Camera 2851 at 13:50, a true and correct copy is attached hereto as Exhibit 5.)[3]  Manley's entire gaming session that day lasted three hours and Manley gambled alone the entire time.  (*Id.*, Camera 2851 at 13:50, Camera 2805 at 17:11)

During this time, Manley requested and executed two (2) credit instruments in favor of MGM Grand: Instrument No. 782928177 in the amount of $2,000,000.00 and Instrument No. 782929189 in the amount of $1,000,000.00.  (Ex. 1, ¶ 3; Credit Instruments, true and correct copies are attached hereto as Exhibit 6.)  Manley was thereby given the cash equivalent of $3,000,000.00 in gambling chips, which he used to play blackjack that day. (Ex. 1, ¶ 3.)

In addition to the credit instruments, Manley requested and executed the following Marker Limit Increase Request Forms:

    a.    Marker Limit Increase Request No. 1, which documented the $2,000,000.00 corporate credit line given to Manley prior to his arrival;

---

[2] MGM Grand also comped accommodations, travel, entertainment, food and beverage for Manley's wife and three friends.  (Ex. 2, 100:6-24.)

[3]  Given that the video surveillance footage has been designated as "CONFIDENTIAL," Defendants are filing a Motion to Seal concurrently herewith.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

b.    Marker Limit Increase Request No. 2, which increased his credit line to $3,000,000.00; and

c.    Marker Limit Increase Request No. 3, which increased his credit line to $3,500,000.00 (which Manley did not utilize on December 10, 2021).

(Ex. 1, ¶ 4; Marker Limit Increase Request Forms, true and correct copies are attached hereto as Exhibit 7.)

While gambling at the MGM Mansion high limit salon, Manley ordered six Old Fashioned cocktails over approximately three hours.[4]  (Ex. 5, Camera 2851 at 13:54, 14:21, 15:07, 15:31, Camera 2804 at 15:58, 16:56.)  During his gameplay, Manley apparently became excited at a hand he had won and proceeded to shatter an ashtray on a nearby table, cutting his hand.  (Ex. 5, Cameras 2851 and 2870 at 16:02.)  This type of purported "celebratory" behavior was not out of the ordinary for Manley.[5]  As such, Manley was offered bandages and moved to a different blackjack table at the high limit salon, where he resumed his gameplay until approximately 5:11 p.m.  (*Id.* at Camera 2804 at 16:10, Camera 2805 at 17:11.)

Thereafter, Manley left the Mansion's high limit salon and returned to his hotel room.  In total, Manley lost $3 million gambling on December 10, 2021.  (Ex. 2, 115:23-116:1.)

**B.    Manley Alleges That His First Cocktail Had Been "Spiked," But Continued to Stay and Gamble at MGM Grand's Property Thereafter**

On the morning of December 11, 2021, Manley had a discussion with one of his friends, John Herman, about his losses the day prior and the end to his winning streak.[6]  (Portions of John Herman Deposition Transcript, 19:24-20:14, a true and correct copy is attached hereto as Exhibit 9.)  Among other things, Manley stated to Herman something to the effect of "I knew it was going

---

[4] The video surveillance shows that Manley consumed most of five Old Fashioned cocktails he was served, as well as a portion of the sixth.

[5] On a prior trip to MGM Grand's property in December 2020, Manley admittedly kicked a hole in one of the walls while celebrating a "giant winning hand."  (Ex. 2, 60:14-61:7; Photos and Text Messages Regarding Hole in the Wall, true and correct copies are attached hereto as Exhibit 8.)

[6] Manley testified that he had won gambling during 14 out of his prior 15 trips to Las Vegas.  (Ex. 2, 130:20-131:4.)

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

to come to an end, but I just didn't think it was going to end this way." (*Id.*; Ex. 2, 130:10-12.) At that time, Manley purportedly believed that he had lost $4 million. (Ex. 2, 127:25-128:3.) Herman thereby informed Manley that he had lost $3 million. (Ex. 9, 20:10-14.)

Shortly thereafter, Manley sent a text message to Ms. Reboton, asking what his outstanding balance was. (Text Messages Between Manley and Ms. Reboton, true and correct copies are attached hereto as Exhibit 10.) Ms. Reboton informed Manley that his outstanding balance was $3 million, and that he had $500,000.00 in credit still available. (*Id.*) Manley proceeded to ask Ms. Reboton about details concerning the poker tournament. (*Id.*) During their conversation, Manley alleged that his drink had been "spiked" the previous afternoon. (*Id.*) Manley, however, did not seek or request any medical treatment. (Ex. 2, 163:23-164:1.) Manley similarly did not return home to California that day. (*Id.* at 135:24-136:2.)

Rather, on December 11, 2021, Manley participated in a poker tournament at Aria Hotel and Casino. (*Id.* at 136:3-137:11.) That same day, Manley requested and executed a third credit instrument for $40,000.00 in favor of MGM Grand.[7] (Manley December 2021 Credit Balance Activity,[8] a true and correct copy is attached hereto as Exhibit 11.) Later that evening, Manley and his friends went to a UFC fight, which was comped by MGM Grand. (Ex. 2, 143:11-16; Ex. 10.)

On December 12, 2021, and in an effort to recoup some of his losses, Manley continued gambling in the Mansion high limit salon. (Ex. 2, 150:20-151:9; Ex. 10.) During his gameplay, Manley requested and executed a fourth credit instrument for $200,000.00.[9] (Ex. 2, 151:25-152:2; Ex. 11.) By the end of his stay, Manley had won some of his losses back. (Ex. 2, 154:2-10.) In fact, during his flight home to California, Manley provided Ms. Reboton with $560,000.00 worth of gambling chips to be applied as a partial payment toward his $1,000,000.00

---

[7] Manley repaid this credit instrument on December 11, 2021. (Ex. 11.)

[8] Defendants are moving to file a redacted version of Manley's December 2021 Credit Balance Activity.

[9] Manley repaid the $200,000.00 credit instrument on December 12, 2021. (Ex. 11.)

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

credit instrument with MGM Grand (*i.e.* Instrument No. 782929189).  (Ex. 1, ¶ 5; Ex. 2, 162:9-22.)

### C.    Manley Fails to Repay the Outstanding Balance of His Credit Instruments and Claims that He Was Allegedly Drugged on December 10, 2021

After Manley's December 2021 trip, MGM Grand did not receive payment for the $2,440,000.00 remaining balance of the credit instruments he executed.  (Ex. 1, ¶ 7.)  Defendants' employees and/or representatives made attempts to resolve payment of the outstanding amount of the credit instruments but were ultimately unsuccessful.  (*Id.*)  As such, on or about March 23, 2022, MGM Grand presented Instrument No. 782928177 in the amount of $2,000,000.00 for payment by Manley's bank, which was ultimately paid.  (Ex. 1, ¶ 8; Ex. 11.)  This reduced Manley's outstanding balance from $2,440,000.00 to $440,000.00.  (Ex. 1, ¶ 8; Ex. 11.)  To date, Manley owes MGM Grand the remaining balance of Instrument No. 782929189, totaling $440,000.00.   (Ex. 1, ¶ 8; Ex. 11.)

In an ongoing attempt to avoid liability for his gambling losses, Manley alleges that that the bartender who made his first Old Fashioned on December 10, 2021 spiked the drink with Ketamine.[10]  Defendants deny that Manley was ever drugged with anything – let alone Ketamine – while at MGM Grand's property.[11] In fact, there is no dispute that the video surveillance footage ***does not*** depict the bartender putting anything inappropriate into Manley's Old Fashioned.  Nevertheless, Manley asserts that he lacked capacity to enter into the Marker Limit Increase Requests and credit instruments with MGM Grand on December 10, 2021.  Therefore, Manley seeks to recover (1) the $2 million that was withdrawn from his bank account for Instrument No.

---

[10] There were only two people who directly interacted with Manley's first Old Fashioned.  As Manley acknowledges, his first drink was prepared by a bartender working at the MGM Mansion bar and was delivered to him by his girlfriend at the time – Natalie Nasongkhla-Manley. (Ex. 2, 90:9-16.)  Nonetheless, Manley has repeatedly maintained that it was the bartender who allegedly "spiked" his drink.  (Portions of Manley's E-mail Correspondence with LVMPD, pg. 3, a true and correct copy is attached hereto as Exhibit 12.)

[11] Defendants' furnishing of alcohol to Manley is not at issue in this case.  The Court has already found that Defendants did not have an affirmative duty to stop serving Manley alcohol once he had allegedly become "erratic."  (*See* ECF No. 28.)

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

782928177 and (2) the $560,000.00 in gambling chips he deposited toward his outstanding balance.  Manley further seeks a judicial declaration that he does not owe the $440,000.00 remaining balance to MGM Grand.

For the reasons discussed below, summary judgment must be entered on MGM Grand's counterclaims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing, which are premised upon the valid and enforceable credit instruments Manley executed on December 10, 2021.  As a matter of law, Manley's purported incapacity defense fails and cannot prevent the entry of summary judgment in MGM Grand's favor.  Indeed, Manley failed to promptly disaffirm the credit instruments, and instead, ratified them.

In addition, Defendants are entitled to summary judgment on each of Manley's claims in this action.  Given Manley's failure to promptly disaffirm the credit instruments, and ratification of the same, portions of his Declaratory Relief claim, and his claim for Breach of the Implied Covenant of Good Faith and Fair Dealing, fail as a matter of law.  Manley's failure to disaffirm and ratification are also fatal to his Deceptive Trade Practice claim, which fails for other reasons as well – including Manley's inability to establish legally cognizable damages under NRS 41.600.  Moreover, Manley cannot establish that Defendants breached any duty of care on December 10, 2021 – and as such – summary judgment must be entered on his Negligence claim.  Finally, because the credit instruments are valid and enforceable contracts, Manley cannot prevail on his Unjust Enrichment claim.

For these reasons, and those discussed below, the Court should grant the instant Motion.

III.    STANDARD OF REVIEW

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court."  *Burns v. Erving*, 810 F. Supp. 2d 1167, 1170 (D. Nev. 2011) (citing *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, (1986); *Celotex*, 477 U.S. at 323. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; it "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor. *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248-49. "If a party fails . . . to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion," and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2) & (3); *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013).

## IV.    ARGUMENT

### A.    <u>MGM Grand Is Entitled to Summary Judgment on Its Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

In Nevada, "to succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Laguerre v. Nevada System of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011) (citing *Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 734 P.2d 1238, 1240 (Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.")). Moreover, "[w]hen facts are not in dispute, contract interpretation is a question of law for the court." *Contreras v. Am. Family Mut. Ins. Co.*, 2015 U.S. Dist. LEXIS 131367, *42 (D. Nev. Sept. 29, 2015) (citing *Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 124 Nev. 1102, 197 P.3d 1032, 1041 (Nev. 2008)).

Under NRS 463.368, the debt represented by a credit instrument is a valid and enforceable debt. NRS 463.368(1). A credit instrument is defined for the purposes of NRS Chapter 463 as "a

writing which evidences a gaming debt owed to a person who holds a nonrestricted license at the time the debt is created. . . ."  NRS 463.01467.  A casino marker, or a credit instrument, also constitutes a writing which evidences a gaming debt.  *Nguyen v. State*, 116 Nev. 1171, 1175, 14 P.3d 515, 518 (2000) (holding a casino marker is a check under Nevada law, which evidences an enforceable gaming debt); *see Zoggolis v. Wynn Las Vegas, LLC,* 768 F.3d 919, 923 (9th Cir. 2014) (stating that markers are checks because "they provided for payment of a specific sum of money drawn from a bank on demand"). Credit instruments are payable on demand, "thus subjecting the [drawer] payor to a repayment obligation at the will of the payee."  *Id.* at 1176, 14 P.3d at 518 (quotations and citation omitted).  Thus, it cannot be disputed that the credit instruments executed by Manley evidence valid and enforceable gaming debts under Nevada law.

"It has long been the policy in Nevada that absent some countervailing reason, contracts will be construed from the written language and enforced as written." *Ellison v. California State Automobile Ass'n.*, 106 Nev. 601, 603, 797 P.2d 975, 977 (Nev. 1990); *Southern Trust Mort. Co. v. K & B Door Co.*, 104 Nev. 564, 568, 763 P.2d 353, 355 (Nev. 1988) (where the document is clear on its face, the court will construe it according to its language).

After taking into account his $560,000.00 deposit toward his debt to MGM Grand, as well as MGM Grand's deposit of the $2 million credit instrument, Manley owes the outstanding balance of Credit Instrument No. 782928189, totaling $440,000.00. Credit Instrument No. 782928189 is signed by Manley and states just below the signature line that he "acknowledges receiving the above amount." (Ex. 6.) Manley does not dispute that he signed this credit instrument.  (Manley Responses to Requests for Admission, Request No. 5, a true and correct copy is attached hereto as Exhibit 13.)  Manley similarly does not dispute that MGM Grand provided him with $1,000,000.00 in credit as evidenced by the credit instrument.  (ECF No. 34, ¶ 5.)  Moreover, the Credit Application executed by Manley states that he has "the ability and intent to legally pay through [his] bank or financial institution the funds represented by the markers signed by [him]."  (Credit Application, a true and correct copy is attached hereto as Exhibit 14.) Accordingly, Manley agreed to repay MGM Grand the debt evidenced by the credit instrument upon signing it and the Credit Application.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

11

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

Nevertheless, Manley breached his contracts with MGM Grand when he failed to timely repay the remaining balance of Credit Instrument No. 782928189 in full. As such, there is no genuine issue of material fact that Manley is liable for the remaining $440,000.00 balance of that credit instrument.

For similar reasons, Manley breached the duty of good faith and fair dealing implied in all contracts. A breach of the covenant will give rise to an award of contract damages. *Hilton Hotels v. Butch Lewis Productions*, 109 Nev. 1043, 1046, 862 P.2d 1207, 1209 (Nev. 1993). Here, Manley failed to act in good faith by refusing to remit the outstanding amount of Credit Instrument No. 782928189, totaling $440,000.00. Instead, Manley has gone to great lengths to skirt his responsibility for the outstanding debt to MGM Grand.

Accordingly, summary judgment must be granted against Manley on MGM Grand's claims Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.

### B.      Manley's Purported Incapacity to Contract Defense Fails as a Matter of Law

"Capacity to contract is presumed, and one who asserts the incapacity of a party to contract has the burden of proof." 17B C.J.S. Contracts § 939. To overcome this presumption, that party must provide evidence of incapacity. *Schwartz v. Schwartz*, 95 Nev. 202, 206 n.2, 591 P.2d 1137, 1140 n.2 (1979) (a party who asserts an affirmative defense has the burden to prove each element of the defense). Specifically, the burden of proof is "the higher standard of clear and convincing evidence." *LaBarbera v. Wynn Las Vegas, LLC*, 134 Nev. 393, 397, 422 P.3d 138, 141 (2018) 17B C.J.S. Contracts § 988 (2018) (stating that a "party must present convincing proof of claims that due to intoxication at the time of making a contract, the party was bereft of mental faculties.")

Under Nevada law, "it must be shown that a man was incapable of exercising judgment, of understanding the proposed engagement, and of knowing what he was about when he entered into the contract, or else it would be held binding." *Seeley v. Goodwin*, 39 Nev. 315, 324, 156 P. 934, 937 (1916) (emphasis added); *see also Babcock v. Engel*, 58 Mont. 597, 194 P. 137 (1920) ("Intoxication must be so deep and excessive as to deprive one of his understanding. If intoxication is relied on as a defense, it must be to such a degree that the party who wishes to

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

avoid his contract on this ground must have been deprived of his reason and understanding."). "[T]he capacity to contract involves a person's inability to understand the terms of an agreement, not his actual understanding. Capacity relates to the status of the person rather than to the circumstances surrounding the transaction."  *General Motors v. Jackson*, 111 Nev. 1026, 1031, 900 P.2d 345, 349 (1995).

Here, Manley asserts an incapacity to contract defense based upon his purported "drugging" on December 10, 2021.  As noted above, in order for Manley to succeed on this defense, he must prove – by clear and convincing evidence – that he lacked the capacity to request and execute the Marker Limit Increase Request forms and credit instruments at issue.  He cannot do so.  What's more, fatal to Manley's purported incapacity defense is the fact that he did not promptly disaffirm the credit instruments at issue.   Rather, Manley **ratified** the credit instruments by, among other things, depositing $560,000.00 worth of gaming chips toward his outstanding debt.   For these reasons, and those discussed below, Manley's purported incapacity defense fails as a matter of law and does not prevent the entry of summary judgment in MGM Grand's favor.

      **1.**      ***Manley Failed to Promptly Disaffirm the Credit Instruments at Issue***

The Nevada Supreme Court has held that an incapacitated party "will be deemed to have ratified the contract ***unless within a reasonable time after becoming sober he takes steps to disaffirm it***."  *Seeley*, 39 Nev. at 323, 156 P. at 936 (emphasis added).  With regard to an intoxication defense, Nevada has adopted the standard set forth in the Restatement (Second) of Contracts, which states that "[o]n becoming sober, the intoxicated person ***must act promptly*** to disaffirm [the contract]." Restatement (Second) of Contracts § 16 cmt. C (emphasis added); *see also, e.g., LaBarbera v. Wynn Las Vegas, LLC*, 134 Nev. 393, 396, 422 P.3d 138, 141 (2018); *Stockmen's Guaranty Loan Co. v. Sanchez*, 194 P. 603, 605, 26 N.M. 499, 505 (1920) ("[A]ssuming that the appellant was incapacitated by drunkenness at the time of the execution of the [contract], he nevertheless ratified his act by the numerous subsequent acts of affirmance" after he was sober); *Mo. Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792-93 (Tex. Ct. App.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

2002) ("Any act inconsistent with an intent to avoid a contract has the effect of ratifying the contract.")

The evidence produced in this matter confirms that Manley made no attempt to promptly disaffirm the credit instruments at issue. First, upon texting Ms. Reboton on December 11, 2021, Manley made no mention of the credit instruments he executed in favor of MGM Grand the prior afternoon. (Ex. 10.) Rather, in a subsequent message to Ms. Reboton, Manley remarked that he was "digging himself out" of the gambling losses he had incurred on December 10, 2021. (*Id.*) In fact, Manley continued to gamble at MGM Grand's casino for two days after he was allegedly "drugged," and executed two (2) additional credit instruments during that time.[12] In addition, Manley continued to accept comped accommodations, entertainment, food and beverage from Defendants on December 11 and 12, 2021. Specifically, on December 11, 2021, Manley received a comped entry into the Texas Hold 'Em tournament, as well as use of MGM Resorts' bunker and seats at a UFC fight. (Ex. 2, 100:19-24.) Manley also utilized MGM Resorts' private jet to return home to California on December 12, 2021. While receiving these comped goods and services, Manley did not do and/or say anything to disaffirm the credit instruments he executed on December 10, 2021.

Furthermore, it was not until *after* MGM deposited the $2 million credit instrument that Manley decided to (1) submit a voluntary statement to the Nevada Gaming Control Board about his alleged "drugging," and (2) file a report with the Las Vegas Metropolitan Police Department. (Nevada Gaming Control Board Statement, a true and correct copy is attached hereto as Exhibit 15; LVMPD Statement, a true and correct copy is attached hereto as Exhibit 16.) Notably, neither of Manley's statements disaffirmed the credit instruments he executed in favor of MGM Grand.

In short, Manley did not promptly disaffirm the credit instruments at issue, including Credit Instrument No. 782928189, which has an unpaid balance of $440,000.00.

### 2.    *Manley Ratified His Credit Instruments with MGM Grand*

---

[12] As noted above, Manley requested and executed credit instruments for $40,000.00 and $200,000.00 on December 11 and 12, 2021, respectively, which he used to gamble. (Ex. 11.)

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

Not only did Manley fail to promptly disaffirm the credit instruments at issue, but he affirmatively ratified those contracts and his debt to MGM Grand.  Ratification can either be express or implied from the course of conduct.  17A C.J.S. Contracts § 185.  Ratification of a contract may be found under a variety of circumstances, such as "taking any material act inconsistent with the intent to avoid the contract, or recognizing the validity of the contract by acting upon it, performing under it, or affirmatively acknowledging it." *Id.*; Restatement (Second) of Contracts § 380 (1981) (stating that the power of a party to avoid a contract for incapacity is lost if "he manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance."); *see also id.* at cmt. b ("A party may manifest his intention to affirm by words or other conduct, including the exercise of dominion over what he has received in a manner inconsistent with avoidance of the contract.")

Upon leaving Las Vegas to return to California, Manley was joined by Ms. Reboton on MGM Resorts' private jet.  (Ex. 2, 162:5-8.)  During their flight, Manley provided Ms. Reboton with $560,000.00 worth of gambling chips to be applied as a partial payment to the outstanding balance owed to MGM Grand.  (*Id.* at 162:9-13.)  The $560,000.00 in gambling chips were ultimately applied to Credit Instrument No. 782928189 (which at that time totaled $1,000,000.00), leaving the outstanding principal balance of $440,000.00.  (Ex. 1, ¶ 6; Ex. 11.) The foregoing is not in dispute.  In fact, two of Manley's acquaintances who accompanied him on his December 2021 trip testified that Manley provided Ms. Reboton gambling chips to pay down a portion of his outstanding balance with MGM. (Ex. 9, 29:19-22, 33:13-19) ("And he and Vanessa were in the back, at which point, my understanding is that he gave her those chips to reduce whatever indebtedness he had to the MGM."); (Portions of Snyder Deposition Transcript, 71:5-8, a true and correct copy is attached hereto as Exhibit 17.) ("I think he ended up stating that he had won some money back on Sunday.  And I believe on the plane ride home with Vanessa he gave all of his winnings to her to put towards his tab.")  Ms. Reboton confirmed the same.  (Ex 3, 121:17-122:2.)

Manley's deposit of $560,000.00 in gambling chips toward his debt with MGM Grand is fundamentally inconsistent with any purported intent to disaffirm the credit instruments he

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

executed.  *Schmidt v. Shah*, 696 F. Supp. 2d 44, 63 (D.D.C. 2010) ("A party's power to avoid a contract … is lost if, after the circumstances that made the contract voidable have ceased to exist, the party 'manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance.'") (quoting Restatement § 380); *Alexander v. Winters*, 3 Nev. 475, 49 P. 116, 119 (1897) ("[N]o person can accept and reject the same instrument.")  Moreover, in addition to the $560,000.00 payment toward his outstanding balance, Manley further acted in a manner inconsistent with disaffirmance by: (1) continuing to gamble at MGM Grand's property on December 11 and 12, 2021; (2) utilizing his credit line to gamble on December 11 and 12, 2021; and (3) continuing to accept comped accommodations from Defendants (*i.e.* entry to the poker tournament, seats at the UFC fight and use of Defendants private jet) during his stay.

Put simply, even if Manley was intoxicated (or purportedly drugged) to the point of lacking capacity, he later ratified the credit instruments as a matter of law by, among other things, making payments towards the debt represented by those credit instruments.  *See Mo. Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792-93 (Tex. Ct. App. 2002) ("Whether a party has ratified a contract may be determined as a matter of law if the evidence is not controverted or is incontrovertible."); *Sununu*, 792 F. Supp. 2d at 56 ("By seeking to fulfill the contract, they foreclosed their opportunity to invalidate it.").

Because Manley (1) failed to promptly disaffirm the credit instruments at issue, and (2) instead, ratified them, any purported incapacity defense fails as a matter of law – and does not prevent the entry of summary judgment in MGM Grand's favor.

### 3. Manley Cannot Otherwise Prove Incapacity by Clear and Convincing Evidence

The foregoing clearly establishes that Manley failed to promptly disaffirm the credit instruments, and instead, ratified them as a matter of law.  However, if the Court somehow concludes that there are triable issues of material fact regarding Manley's failure to disaffirm and/or his ratification (there are none), Manley *cannot* establish by clear and convincing evidence that he lacked the capacity to contract on December 10, 2021.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

To be clear and convincing, "there must be evidence of tangible facts from which a legitimate inference . . . may be drawn." *In re Discipline of Schaefer,* 117 Nev. 496, 515, 25 P.3d 191, 204 (internal quotation marks omitted), *as modified by* 31 P. 3d 365 (2001). "Clear and convincing evidence requires greater proof than preponderance of the evidence. To meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that [the asserted factual contentions are] ***highly probable***.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 866–67 (9th Cir. 2004) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984) (emphasis added)).

First, the purported hair test results produced by Manley in this matter are, at ***best***, inconclusive. (Hair Test Results, a true and correct copy is attached hereto as Exhibit 18.) Among other reasons, the hair test's baseline sample (reflecting a time period between October 25, 2021 to November 22, 2021) returned positive for Ketamine. (*Id.*) This was ***prior*** to Manley's arrival at MGM Grand's property. (*Id.*) Moreover, the results do not indicate that Manley was drugged on December 10, 2021. Instead, they simply indicate that Manley purportedly had Ketamine in his system over a month-long timeframe, between November 22, 2021 and December 20, 2021, which merely encompassed his December 10, 2021 stay at MGM's property. (*Id.*) What's more, the purported hair test results ***expressly state*** that they are "for clinical use only, not for forensic purposes." (*Id.*) Thus, while Ketamine was purportedly detected in Manley's system between October 25, 2021 and December 20, 2021, the results do ***not*** establish his allegation of being drugged ***on*** December 10, 2021 while visiting MGM's property.

Furthermore, none of Manley's retained experts in this case affirmatively opine that he lacked the capacity to contract on December 10, 2021. Indeed, Manley's actions on December 11 and 12, 2021 clearly indicate that he did, in fact, have the capacity to request and execute the credit instruments at issue.

Considering the foregoing, Manley cannot avoid his repayment obligations to MGM Grand. Summary judgment must be entered in MGM Grand's favor on its contract-based claims against Manley.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

**C.**     **Because Manley Failed to Promptly Disaffirm the Credit Instruments, But Rather, Ratified Them, His Claims for Declaratory Relief and Breach of the Implied Covenant of Good Faith and Fair Dealing Fail as a Matter of Law**

Manley's failure to promptly disaffirm the credit instruments at issue, and his ratification of the same, are also fatal to his claims for Declaratory Relief and Breach of the Implied Covenant of Good Faith and Fair Dealing.  First, as it relates to his gambling debt to MGM Grand, Manley seeks the following judicial declarations:

- Manley was unable to understand in a reasonable manner the nature and consequence of his actions and the transactions during this timeframe (*i.e.* December 10, 2021), as Defendants knew or should have known;

- Manley was unable to act in a reasonable manner in relation to the above-described transactions (*i.e.* the issuance and/or execution of the Marker Limit Increase Request forms and credit instruments);

- Manley lacked capacity to contract when signing the two Marker Limit Increase Request forms and credit instruments; and

- The Marker Limit Increase Requests and credit instruments are invalid and/or unenforceable as a matter of law, and if necessary, rescinded.

(*See* ECF No. 64, ¶¶ 73(c)-(g).)

For the reasons set forth above, Manley is not entitled to any of the foregoing judicial declarations as a matter of law.  Even if Manley purportedly lacked the capacity to enter into the Marker Limit Increase Request forms and credit instruments at issue, he failed to promptly disaffirm those contracts.  In fact, Manley ratified those contracts by – among other things – depositing $560,000.00 in gambling chips toward his debt to MGM Grand.  As such, Defendants are entitled to summary judgment on the foregoing portion(s) of Manley's Declaratory Relief claim.

Next, Manley's ratification of the credit instruments confirms that he does not have a viable claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.  There is simply no evidence that Defendants acted in any way inconsistent with the purpose of the credit instruments, or Manley's expectations concerning those contracts. Manley, who is a self-described "experienced gambler" was well aware of the terms of his credit instruments with MGM Grand.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

The fact that Manley chose to pay $560,000.00 toward the balance of those credit instruments is indicative of his expectation that MGM Grand was entitled to – and anticipated – payment of the debt evidenced by the credit instruments.  Moreover, MGM Grand's depositing of the $2 million credit instrument with Manley's bank was clearly consistent with the purpose and terms of that contract.  (Ex. 6.) ("I authorize MGM Grand Hotel and Casino to . . . complete this credit instrument as is necessary *for the credit instrument to be presented for payment as a negotiable instrument*.") (Emphasis added.)

Accordingly, Defendants are entitled to summary judgment on Manley's Breach of the Implied Covenant of Good Faith and Fair Dealing claim as well.

### D. Defendants are Similarly Entitled to Summary Judgment on Manley's Deceptive Trade Practice Claim

#### 1. *Nevada's Deceptive Trade Practice Act Cannot Apply to the Extension of Credit and/or Gaming Transactions*

Manley's Deceptive Trade Practice claim is premised upon Defendants' extension of credit by way of the Marker Limit Increase Request forms and credit instruments.  Extension of credit, however, is not the type of consumer transaction contemplated by Nevada's Deceptive Trade Practice Act (the "NDTPA").  The NDTPA similarly does not, and cannot, encompass consumer gaming transactions.

The Ninth Circuit has noted that, "[w]here Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance." *Mort v. U.S.,* 86 F.3d 890, 893 (9th Cir. 1996).  Accordingly, federal courts interpreting Nevada law, in the absence of direct guidance from the Nevada courts, should give particular weight to the decisions of the California courts. *Eichacker v. Paul Revere Life Ins. Co.,* 354 F.3d 1142, 1145 (9th Cir. 2004).

In *Anderson v. HSBC Bank Nevada, N.A.*, No. CV 09-04271 DDP (EX), 2009 WL 10671379, at *6 (C.D. Cal. Sept. 23, 2009), the court was tasked with determining whether the NDTPA encompassed the extension of consumer credit.  The *Anderson* court concluded that it did not. *Id.*  In doing so, the *Anderson* court noted that a majority of courts have concluded that the extension of credit does not amount to a sale or lease of goods or services for purposes of a

deceptive trade practice claim. *Id.* (citing *Berry v. Am. Express Publ'g, Inc.*, 554 Cal. Rptr. 3d 91, 92 (Ct. App. 2007) (holding that the issuance of a credit card is not a transaction intended to result in the sale or lease of goods or services within the meaning of the California Consumer Legal Remedies Act); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173-75 (Tex. 1980) (holding that the extension of credit is not a good or service); *Haeger v. Johnson*, 548 P.2d 532 (Or. Ct. App. 1976) (holding that the lending of money is not a sale of goods or services within the meaning of Oregon's Unlawful Trade Practices Act); *see also e.g., Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp. 2d 561, 572 (S.D. Tex. 2012), *aff'd sub nom. Kiper v. BAC Home Loans Servicing, L.P.,* 534 F. App'x 266 (5th Cir. 2013) (stating that a person who seeks "only the extension of credit . . . and nothing more is not a consumer under the DTPA because the lending of money is not a good or service.") (Internal quotations omitted.)   Because Manley's Deceptive Trade Practice claim is centered upon Defendants' extension of credit – which is not the kind of consumer transaction encompassed by the NDTPA – it fails as a matter of law.

Moreover, the NDTPA does not apply to gambling transactions.   Pursuant to NRS 598.0955(a), "[t]he provisions of NRS 598.0903 to 598.0999, inclusive, **do not apply to … [c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state or local governmental agency**."   The Nevada Gaming Control Board, and Nevada's Gaming Control Act, clearly regulate and control casinos' extensions of credit to patrons. *See e.g.,* Nev. Gam. Reg. 5.140, 5.255 and 6.020.   Permitting plaintiffs to proceed with consumer fraud claims against casinos regarding their extension and use of credit would conflict with Nevada's longstanding gaming regulatory scheme.

Other courts have concluded the same.   To illustrate, in *Doug Grant, Inc. v. Greate Bay Casino Corp.,* 232 F.3d 173, 188 (3d Cir. 2000), the Third Circuit Court of Appeals found that New Jersey's consumer fraud act was inapplicable where "the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes." *Id*.   In doing so, the Third Circuit Court of Appeals upheld a district court's conclusion that New Jersey's extensive gambling regulations, and corresponding Casino Control Act,

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

"precludes an action under the Consumer Fraud Act." *See Doug Grant, Inc. v. Greate Bay Casino Corp.,* 3 F. Supp. 2d 518, 537 (D.N.J. 1998), *aff'd as modified and remanded,* 232 F.3d 173 (3d Cir. 2000); *see also Antar v. Borgata Hotel Casino & Spa, LLC,* No. CV 22-05785, 2024 WL 1672280, at \*1 (D.N.J. Jan. 31, 2024) (finding that a plaintiff's Consumer Fraud Act claim was unviable, given that it was based upon conduct regulated by New Jersey's Casino Control Act).

The same conclusion must be reached here. Because the NDTPA does not apply to (1) extensions of credit and/or (2) gaming transactions, summary judgment must be entered in Defendants' favor on Manley's Deceptive Trade Practice claim.

### 2.      *Manley Has Not Suffered Damages Under NRS 41.600*

A deceptive trade practices claim brought under NRS 41.600(1) requires a party to prove "(1) an act of consumer fraud by the defendant [that] (2) caused (3) ***damage to the plaintiff.***" *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009); *see also* NRS § 41.600(2)(e) (defining consumer fraud to include deceptive trade practices listed in NRS §§ 598.0915 to 598.0925).

The Nevada Supreme Court opinion in *Leigh-Pink v. Rio Properties, LLC*, 138 Nev. Adv. Op. 48, 512 P.3d 322, 327 (2022) is illustrative to this case. In *Leigh Pink*, the Supreme Court found that in instances where a plaintiff "**assert[s] only economic injury <u>but ha[s] received the true value of their goods or services</u> . . . the plaintiff[] ha[s] not been injured and thus ha[s] not 'sustained' any damages by the defendant's conduct under NRS 41.600(3)(a).**" *Leigh-Pink*, 512 P.3d at 327–28 (emphasis added). In other words, a plaintiff who receives the true value of the goods or services purchased has not suffered damages under NRS 41.600.

Here, Manley's Deceptive Trade Practice claim is solely premised on economic injuries, *i.e.* the $2 million that was withdrawn from his bank account upon depositing Credit Instrument No. 782928177, the $560,000.00 in gaming chips he paid toward his debt to MGM Grand, and the $440,000.00 balance he currently owes on Credit Instrument No. 782929189. Manley, however, acknowledges that he received the $3 million in credit he requested from MGM Grand on December 10, 2021 in the form of chips that he used to gamble. Put differently, there is no genuine dispute of material fact that Manley received the "true value" of the credit instruments he

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

executed in favor of MGM Grand.   As such, Manley has not – and frankly, ***cannot*** – establish a central element of his Deceptive Trade Practice claim: legally cognizable damages under NRS 41.600.

> **3.       *Because Manley Failed to Promptly Disaffirm, and Instead, Ratified the Credit Instruments, He Cannot Establish a Claim for Deceptive Trade Practice Under NRS 598.092(14)***

Manley purportedly premises his Deceptive Trade Practice Claim on NRS 598.092(14), which states as follows:

> A person engages in a "deceptive trade practice" when in the course of his or her business or occupation he or she:

> Knowingly takes advantage of another person's inability reasonably to protect his or her own rights or interests in a consumer transaction when such an inability is due to illiteracy, or to a mental or physical infirmity or another similar condition which manifests itself as an incapability to understand the language or terms of any agreement.

NRS 598.092(14); ECF No. 20.[13]

Manley's Deceptive Trade Practice claim fails for a number or reasons.  First, he ratified his credit instruments with MGM Grand.  Thus, as a matter of law, Manley cannot establish that he was incapable of "protecting his . . . own rights in a consumer transaction."  Indeed, and as set forth in detail above, Manley did not promptly disaffirm the credit instruments (or Marker Limit Increase Request forms) at issue.  Instead, Manley ***continued*** to gamble at MGM Grand's property.  In fact, Manley proceeded to utilize his line of credit by requesting and executing two additional credit instruments on December 11 and 12, 2021.  Moreover, on December 12, 2021, Manley paid $560,000.00 toward his outstanding debt to MGM Grand – which is evidenced by the very credit instruments that inform his Deceptive Trade Practice claim.  By making the $560,000.00 payment toward his debt, Manley ratified those credit instruments as a matter of law.

---

[13] While unclear from the operative complaint in this case, Manley identified that his Deceptive Trade Practice claim is premised on the foregoing statute upon opposing Defendants' Motion to Dismiss the First Amended Complaint.  (*See* ECF No. 20) (stating that "Plaintiff's NDPTA claim is based upon NRS 598.092(14).")

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

The foregoing facts are not in dispute and are fatal to Manley's Deceptive Trade Practice claim. Because Manley ratified the credit instruments at issue in this matter, he cannot establish a deceptive trade practice under NRS 598.092(14).

For these reasons, summary judgment must be entered in Defendants' favor on Manley's Deceptive Trade Practice claim.

**E.    Defendants Are Entitled to Summary Judgment on Manley's Negligence Claim**

Manley's Negligence claim is premised upon his alleged drugging at the MGM Mansion on December 10, 2021, as well as his purported physical injuries and gambling losses. As noted above, Defendants dispute that Manley was drugged on December 10, 2021. Even if he was (he was not), Manley is without any evidence to establish ***how*** his first Old Fashioned cocktail was purportedly "spiked," as well as who purportedly "spiked" it. In short, there is simply no evidence that would have made Manley's alleged drugging – or the physical injuries and gambling losses he associates with his drugging – foreseeable to Defendants. For these reasons, and those set forth below, Manley cannot establish his Negligence claim against Defendants as a matter of law.

**1.    *There Is Simply No Evidence that Manley Was Drugged by an MGM Grand Employee or a Third Party, and As Such, Defendants Did Not Breach a Duty of Care***

Since his December 2021 visit to Las Vegas, Manley has maintained that the MGM Mansion bartender was "the only person" that could have allegedly "spiked" his first Old Fashioned cocktail on December 10, 2021. (Ex. 10; Ex. 12.) Manley confirmed the same during his deposition:

> Q: Okay. Now, it's your allegation in this case that the first old fashioned you drank was spiked with ketamine; is that correct?
>
> A: Yes.
>
> Q: And only the first drink, the first old fashioned you drank was spiked with ketamine; correct?
>
> A: That's what I'm saying.

23

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

Q:  Who spiked your drink with ketamine, as you've alleged?

A:  I think the person that made the drink.

Q:  Your belief is that the bartender that made the first old fashioned is the individual that spiked your drink; correct?

A:  I think whoever made the drink.

Q:  And that would have been the bartender that made the first drink; correct?

A: If she's the only person that made the drink.

(Ex. 2, 94:14-95:7.)

Manley is without any evidence to establish – or remotely suggest – that his first Old Fashioned cocktail was "spiked" by the MGM Mansion bartender that evening.  Rather, the video surveillance dispels any theory that Manley was allegedly drugged by the bartender – or any MGM employee for that matter.  (Ex. 5, Camera 2868 at 13:51-13:54.)  In fact, upon investigating Manley's allegations, LVMPD's detectives concluded the same.  Specifically, after reviewing the video surveillance, LVMPD Detective Atkin concluded that "there wasn't any evidence that proved an employee did any illegal acts," and that LVMPD "did not find evidence that a criminal act took place in this case."  (Ex. 12.)

Nevertheless, Manley maintains that his first Old Fashioned cocktail was "spiked" with Ketamine:

Q:  And how did she spike your drink with ketamine, as you've alleged?

A:  With the ingredients.

Q:  What specific -- tell me how she spiked your drink, generally speaking?

A:  Something in those ingredients was -- either had ketamine in it or it was added in -- in a -- I don't know which ingredient, but there were a lot of steps that went into that that somehow -- I don't believe in magic -- ketamine got into that glass.  And she made it.

(Ex. 2, 95:16-96:4.)

Again, the video surveillance footage does *not* depict the MGM Mansion bartender putting anything but the ingredients of an Old Fashioned into Manley's glass.  (Ex. 5, Camera

24

2868 at 13:51-13:54.) The foregoing is not in dispute.  To the extent that Manley alleges that the ingredients themselves contained Ketamine – there is simply no evidence to support his absurd hypothesis.  Indeed, any argument as to how Manley was purportedly exposed to Ketamine is pure speculation.

Given that there is no dispute that Manley was not drugged by an MGM employee, the only remaining basis for liability against Defendants would involve a third-party drugging. Under NRS 651.015(2), an innkeeper has a duty to protect patrons from ***foreseeable*** wrongful acts of third parties. "The determination of foreseeability as it relates to an innkeeper's duty of care to a patron must be made by the district court as a matter of law." *Est. of Smith ex rel. Smith v. Mahoney's Silver Nugget, Inc.,* 127 Nev. 855, 859, 265 P.3d 688, 691 (2011)  The foregoing determination is governed by NRS 651.015(3). *Id.*

NRS 651.015(3) provides that a wrongful act is ***not*** foreseeable unless: (a) the owner failed to exercise due care; or (b) similar prior incidents occurred on the premises and the owner had notice or knowledge of those incidents.  Thus, in order to prevent the entry of summary judgment, Manley must establish that (1) he was, in fact, drugged with Ketamine, and (2) his alleged drugging was foreseeable under either NRS 651.015(3)(a) or NRS 651.015(3)(b).

Here, the alleged "spiking" of Manley's first Old Fashioned cocktail was not foreseeable. As set forth above, Manley maintains that the ingredients of his first cocktail must have contained Ketamine. (Ex. 2, 95:16-96:4.)  There is no evidence that any of the ingredients used in Manley's drink were contaminated with Ketamine, or that a third party did, in fact, "spike" Manley's first Old Fashioned cocktail.  Indeed, apart from the MGM Mansion bartender, only one other person interacted with Manley's drink: his wife.  The video surveillance footage confirms the same and does not depict Manley's wife putting any unknown substance into his Old Fashioned.   (Ex. 5, Camera 2809 at 13:54; Camera 2851 at 1354.)

What's more the likelihood of alcohol and/or other bar ingredients containing illicit substances is ***wholly*** unforeseeable to Defendants.  It would be unreasonable to conclude that Defendants knew, or somehow should have known, that any alcohol and/or bar ingredients were purportedly contaminated with Ketamine by an unknown third party (because they were not).

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

*Merluzzi v. Larson,* 96 Nev. 409, 414, 610 P.2d 739, 742 (1980) ("[T]he foreseeability of harm is a predicate to establishing the element of duty.")

Finally, there is no evidence of similar prior incidents that occurred at Defendants' properties that would have made Manley's alleged third-party drugging (by contaminated ingredients or otherwise) foreseeable to Defendants.

Considering that (1) the video surveillance confirms that the MGM Mansion bartender did not "spike" Manley's drink, (2) Manley is without any evidence that a third party "spiked" his drink, and (3) there is no evidence that the cocktail's ingredients were somehow contaminated with Ketamine, Manley cannot establish that Defendants breached a duty of care as a matter of law. For this reason alone, summary judgment must be entered on Manley's Negligence claim.

### 2. *Defendants Did Not Breach a Duty of Care by Extending Manley Credit and/or Allowing Him to Continue to Gamble*

Apart from his alleged drugging, which has not – and cannot be – conclusively established in this case, Manley further contends that Defendants breached a duty of care by allowing him to continue to request and gamble on credit while acting "erratic."[14] This Court has already held that Defendants did not have a duty to stop serving Manley alcohol once he purportedly became "erratic." (ECF No. 28.) Manley is similarly unable to establish that Defendants somehow breached a duty of care by permitting him to request credit and continue to gamble on December 10, 2021. There is no common law duty of care that required Defendants to do so that has been adopted by Nevada courts. In fact, other jurisdictions have expressly declined to recognize such a duty of care.

For instance, in *Hakimoglu v. Trump Taj Mahal Assocs.,* 70 *F.*3d 291 (3d Cir.1995), *aff'g* 876 *F.Supp.* 625 (D.N.J.1994), the court found that a gambler has no common law cause of action against a casino for damages based upon either encouraging a gambler to consume alcohol or extending credit to an intoxicated gambler. In doing so, the court reasoned that imposing liability

---

[14] Apart from shattering an ashtray upon winning a hand (which was not out-of-the ordinary behavior for Manley), the video surveillance footage does not depict Manley acting "erratic" while gambling in the MGM Mansion high limit salon on December 10, 2021. (*See* Ex. 5.)

on casinos for such acts would lead to "difficult problems of proof and causation," particularly since "sober gamblers can play well yet lose big, intoxicated gamblers can still win big, and under the prevailing rules and house odds, the house will win and the gamblers will lose anyway in the typical transaction." *Id.* The court further reasoned that extending such liability "into an area so fully regulated, without a glimmer of legislative intent, is not a predictable extension of common law tort principles . . . ." *Id.*

The same is true here. The duty of care Manley wishes to impose on Defendants in this action simply does not, and cannot, exist. Thus, because Manley cannot establish (1) a duty to prevent him from requesting and gambling on credit, and (2) Defendants' breach thereof, his Negligence claim fails as a matter of law.

### 3. *Defendants Cannot Be Found Liable for Manley's Purported Physical Injuries*[15]

As the Court knows, it is well settled in Nevada that "commercial liquor vendors, including hotel proprietors, ***cannot be held liable for damages related to any injuries caused by the intoxicated patron, which are sustained by either the intoxicated patron*** or a third party." *Rodriguez v. Primadonna Co., LLC*, 125 Nev. 578, 585, 216 P.3d 793, 798 (2009) (citing *Hamm v. Carson City Nugget, Inc.,* 85 Nev. 99, 101, 450 P.2d 358, 359 (1969). This principle precludes Defendants' liability for Manley's alleged physical injuries – including the cut on his hand and any alleged bruising he sustained.

Moreover, Manley cannot establish causation for the foregoing injuries. Causation consists of two components: actual cause and proximate cause. *Dow Chemical Co. v. Mahlum*, 114 Nev. 1468, 970 P.2d 98, 107 (1998) *abrogated on other grounds by GES, Inc. v. Corbitt*, 117 Nev. 265, 21 P.3d 11 (2001). Actual causation is premised upon a "but for" analysis, *i.e.* that "but for defendant's negligence, his or her injuries would not have occurred." *Sims v. Gen. Tel. &*

---

[15] Importantly, Manley never sought medical treatment for the alleged injuries he sustained in this matter (*i.e.* the minor cut to his hand or purported bruising). Manley is similarly not seeking past medical specials for those injuries. As such, any damages associated with Manley's negligence claim would be de minimis at best. Instead, the gravamen of Manley's claim is premised upon his gambling losses – which sound in contract, not tort.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

*Elecs.*, 107 Nev. 516, 815 P.2d 151, 156 (1991) *overruled on other grounds by Tucker v. Action Equip. & Scaffold Co., Inc.*, 113 Nev. 1349, 951 P.2d 1027 (1997); *overruled on other grounds by Richards v. Republic Silver State Disposal, Inc.*, 122 Nev. 1213, 148 P.3d 684 (2006); *see also Roe v. State,* 621 F.Supp.2d 1039, 1057 (D. Nev.2007); *Dillingham Tug & Barge Corp. v. Collier Carbon & Chem. Corp.*, 707 F.2d 1086, 1092 (9th Cir. 1983) (stating that mere negligence alone does not indicate liability, rather, the negligence must have caused the injury).

As set forth herein, Manley is unable to establish that Defendants were negligent in any shape or form on December 10, 2021.  Among other things, Manley has no means of proving that (1) his drink was allegedly "spiked" with Ketamine, (2) that the "spiking" of his drink would have been foreseeable (if it actually occurred, which it did not), or (3) that Defendants could have reasonably prevented his alleged drugging.  Thus, the injuries that Manley associates with his purported "erratic" behavior on December 10, 2021 were not actually or proximately caused by Defendants.

Considering the foregoing, Defendants are entitled to summary judgment on Manley's Negligence claim as a matter of law.[16]

**F.    <u>Manley's Unjust Enrichment Claim Fails as a Matter of Law</u>**

"Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Topaz Mut. Co., Inc. v. Marsh*, 108 Nev. 845, 839 P.2d 606, 613 (1992). The essential elements of an unjust enrichment claim are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such a benefit; and (3) acceptance and retention by the defendant of such a benefit.  *Unionamerica Mortg. & Equity Tr. v. McDonald*, 97 Nev. 210, 626 P.2d 1272, 1273 (1981).

An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement. 66

---

[16] For the same reasons Manley's Negligence claim fails, portions of his Declaratory Relief claim concerning Defendants "failing to act responsibly" toward his purported "erratic behavior" fail as well. (*See* ECF No. 64, ¶ 73(a)-(b).)

Am.Jur.2d *Restitution* § 6 (1973). "The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." 66 Am.Jur.2d *Restitution* § 11 (1973); *see Lipshie v. Tracy Investment Co.,* 93 Nev. 370, 379, 566 P.2d 819, 824 (1977) ("To permit recovery by quasi-contract where a written agreement exists would constitute a subversion of contractual principles.").

Here, the credit instruments constitute valid and enforceable contracts under Nevada law. (*See* Ex. 6)  Manley failed to timely disaffirm those contracts, and instead, ratified them.  As such, the gambling debt Manley seeks to recoup in this action is based upon valid, express contracts with MGM Grand.  For this reason alone, Manley's Unjust Enrichment claim fails.

Similarly, Manley cannot establish that Defendants have been unjustly enriched.  Among other things, Manley is unable to prove that Defendants' (1) depositing of the $2 million credit instrument, or (2) acceptance of the $560,000.00 in gambling chips, violates any equitable principles (because they do not, and cannot, pursuant to his contracts with MGM Grand).  Indeed, if any party was conferred a benefit, it was Manley, given that he has yet to repay the outstanding $440,000.00 owed to MGM Grand.  Accordingly, the Court must enter summary judgment in Defendants' favor on Manley's Unjust Enrichment claim.

## V.   CONCLUSION

Based upon the foregoing, Defendants respectfully request that the Court grant the instant Motion in its entirety.

DATED this 14th day of May 2025.

SEMENZA RICKARD LAW

*/s/ Lawrence J. Semenza, III*
Lawrence J. Semenza, III, Esq., Bar No. 7174
Katie L. Cannata, Esq., Bar No. 14848
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
*Attorneys for Defendant MGM Resorts International
& Defendant/Counterclaimant MGM Grand Hotel,
LLC*

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

**CERTIFICATE OF SERVICE**

I am employed by the law firm of Semenza Rickard Law in Clark County, Nevada. I am over the age of 18 and not a party to this action. The business address is 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145.

I hereby certify that on the 14th day of May 2025, I served the document(s), described as:

**DEFENDANT MGM RESORTS INTERNATIONAL AND DEFENDANT/COUNTERCLAIMANT MGM GRAND HOTEL, LLC'S MOTION FOR SUMMARY JUDGMENT**

☒    by sending the ☐ original ☒ a true copy thereof:

☒  a.  via **ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

**PRHLAW LLC**
Charles H. McCrea, charles@prhlawllc.com, tlc@hmlawlv.com
Paul R. Hejmanowski, paul@prhlawllc.com, tc@hmlawlv.com
*Attorneys for Plaintiff*

☐ b.  **BY U.S. MAIL.** I deposited such envelope in the mail at Las Vegas, Nevada. The envelope(s) were mailed with postage thereon fully prepaid. I am readily familiar with Semenza Rickard Law's practice of collection and processing correspondence for mailing. Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at Las Vegas, Nevada in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

☐ c.  **BY PERSONAL SERVICE.**

☐ d.  **BY DIRECT EMAIL**

☐ e.  **BY FACSIMILE TRANSMISSION.**

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Olivia A. Kelly*
An Employee of Semenza Rickard Law

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803