UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DWIGHT MANLEY,<br><br>  Plaintiff,<br><br>v.<br><br>MGM RESORTS INTERNATIONAL & MGM GRAND HOTEL, LLC<br><br>  Defendants. | Case No. 2:22-cv-01906-MMD-EJY<br><br>**ORDER** |

Pending before the Court is Plaintiff Dwight Manley's Motion for an Adverse Inference Jury Instruction. ECF No. 121. The Court considered the Motion, Defendants' Response (ECF No. 135), Plaintiff's Reply (ECF No. 147), and the related Correction (ECF No. 149). The Court finds as follows.

**I.   Background**

The alleged facts and events underlying this action are well known to the parties and the Court. Thus, these facts are only discussed to the extent applicable to this Order. Plaintiff initiated this action against MGM Resorts International and MGM Grand Hotel (collectively "Defendants") asserting various claims arising from the alleged drugging of Plaintiff during a stay at the MGM Grand Mansion on December 10, 2021. ECF No. 1. Relevant to the instant Motion is Plaintiff's negligence claim, in which he alleges Defendants failed to "properly address Plaintiff's incapacitated state while concurrently extending credit and significantly increasing his credit limit." ECF No. 64 at 12. Also relevant is Defendants' various counterclaims seeking to recover 'Plaintiff's outstanding debt from the date in question, ECF No. 32 at 16-19.

The pertinent allegations on which Plaintiff's negligence claim is based involve a series of interactions among Vanessa Reboton ("Reboton"), Plaintiff's host at MGM Grand, Justin Manacher ("Manacher"), a senior executive at MGM responsible for approving credit at all MGM Resorts International Las Vegas properties, Plaintiff, and Chris Snyder ("Snyder"), a friend of Plaintiff's who accompanied him during the dates in question.

Specific to his incapacitation, Plaintiff asserts that after he had consumed a drink he alleges was spiked with ketamine, Reboton informed Snyder that "they" thought Plaintiff was behaving erratically, but that she "had it handled." ECF No. 121 at 5. Plaintiff states he believes the "they" in Reboton's statement was a reference to senior MGM Grand staff. *Id.* Plaintiff signed two "markers," or lines of credit, for $1 million and $500,000 respectively, after Reboton's remark to Snyder was allegedly made. *Id*. at 8. These markers were in addition to the $2 million credit line Plaintiff had executed the day before his stay, and brought Plaintiff's total line of credit to $3.5 million for the night. *Id.* Plaintiff represents that Reboton had to get approval from Manacher to execute each marker. *Id.* at 4. The record reflects multiple text messages were exchanged between Reboton and Manacher during the time when the markers were approved. ECF No. 149. Plaintiff went on to lose approximately $3 million gambling before retiring to his room later that afternoon, $440,000 of which Defendants represent remains outstanding. ECF No. 135 at 6, 26.

Three days after the alleged drugging, Plaintiff's counsel sent Defendants a preservation demand letter in anticipation of the present litigation.[1] ECF No. 121-10. Plaintiff represents that despite the preservation letter and common law obligations to preserve relevant evidence, the December 10, 2021 text messages between Reboton and Manacher were not produced. ECF No. 121 at 7. Defendants do not deny this, but respond that the text messages on Reboton's phone were lost upon transferring to a new work phone, and that Manacher believes the texts may have been lost due to an automatic deletion function on his phone. ECF No. 135 at 16. Plaintiff asserts that these missing text messages may have been relevant to his claim that Defendants were aware of his intoxicated state at the time they granted him extensions of credit, as well as to his defense to Defendants' claims to collect on Plaintiff's gambling debt. ECF No. 121 at 8. Thus, Plaintiff brought the instant Motion seeking sanctions for spoliation of evidence including: (1) preclusion of any evidence, testimony, or argument of an innocent explanation for the loss of the text messages; (2) preclusion of any evidence suggesting MGM personnel did not believe Plaintiff was acting irrationally before the second and third extensions of credit were executed; and (3) an adverse jury

---

[1] Although the original letter requested preservation only of video surveillance footage, a subsequent email sent the same day extended that request to include "all communications related to Mr. Manley on December 10, 2021 and thereafter." ECF No. 121-11.

2

instruction that the jury may infer the missing text messages would have been favorable to Plaintiff. ECF No. 121 at 15.

**II.    Legal Standard**

Spoliation refers to the destruction or alteration of evidence related to pending or reasonably foreseeable litigation, either intentionally or by failure to take reasonable efforts to preserve. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). The threshold issue in resolving a motion for spoliation is whether or not evidence was actually altered or destroyed. *Lemus v. Olaveson*, Case No. 2:14-cv-01381-JCM-NJK, 2015 WL 995378, at *9 (D. Nev. Mar. 5, 2015). Once this has been established, the moving party bears the burden of showing: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the evidence was relevant to the party's claim or defense. *Reinsdorf v. Skechers* U.S.A., Inc., 296 F.R.D. 604, 626 (C.D. Cal. 2013). The moving party must establish these elements by preponderance of the evidence. *Compass Bank v. Morris Cerullo World Evangelism*, 104 F.Supp. 3d 1040, 1051-52 (S.D. Cal. 2015).

Specifically with regard to electronically stored information ("ESI"), Federal Rule of Civil Procedure ("FRCP") 37(e) grants district courts the authority to issue certain sanctions when ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). If the Court determines that the opposing party acted with intent to deprive the moving party of the use of the ESI, the Court may impose severe sanctions including instructing the jury they may presume the information was unfavorable to the opposing party or dismissing the action. Fed. R. Civ. P. 37(e)(2). If the Court finds no intent but nonetheless finds prejudice to the moving party from the loss of the information, the Court may only order proportionate sanctions that are no greater than necessary to cure the prejudice. Fed. R. Civ. P. 37(e)(1). Thus, the key question in determining which sanctions the Court may enter is whether the moving party has established that the opposing party acted with intent to deprive.

**III.    Discussion**

As an initial matter, the Court finds no merit to Defendants' argument that because the instant Motion seeks to exclude certain evidence from trial it should be construed as a motion in limine. ECF No. 135 at 7. Although Plaintiff seeks certain evidentiary sanctions that may also be sought later through a motion in limine, such relief may properly be sought under Rule 37(e). In fact, the commentary to the Rule specifically recognizes "forbidding the party that failed to preserve information from putting on certain evidence" as a valid sanction under the Rule that may be used to cure prejudice when appropriate. Fed. R. Civ. P. 37, Advisory Committee's notes to the 2015 amendment. Whether or not the Court finds such sanction appropriate in this case, the fact that Plaintiff requests such relief does not transform his Motion into an untimely motion in limine.

Turning to the substance of the instant Motion, Defendants do not dispute that the text messages at issue are no longer in their possession. ECF No. 135 at 16 (acknowledging "the text messages were lost"). Although Defendants represent they have sought forensic imaging of Manacher's phone in an attempt to locate the missing text messages, the lack of any further representation by Defendants naturally leads to the conclusion that this effort was unsuccessful and the texts cannot be restored or replaced. *Id.* at n.14. Because the threshold issue is not disputed, the Court limits its discussion to duty, culpability, and prejudice.

   A.    <u>MGM Had a Duty to Preserve the Text Messages</u>.

The duty to preserve evidence arises when a party "reasonably should have known that the evidence is relevant to anticipated litigation." *United States v. Semenza*, Case No. 2:22-cv-02059-APG-DJA, 2024 WL 5294520 (D. Nev. Dec. 19, 2024). Rule 37(e) does not create a new duty to preserve, but instead is based on the common law duty, and directs courts to consider "the extent to which a party was on notice that litigation was likely and that the information would be relevant." Fed. R. Civ. P. 37(e), Advisory Committee's notes to 2015 amendment. Under this common law duty, "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which he or she knows or reasonably should know is relevant to the action or may be relevant to future litigation." *Colonies Partners L.P. v. Cnty. of San Bernardino*, Case No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) (internal quotations omitted).

4

In this case, there is no question that Defendants were notified of the potential for litigation as early as three days after the afternoon in question; that is, December 13, 2021, when counsel for Plaintiff first sent a preservation demand. ECF No. 121-10. While the initial letter only specifically requested that video surveillance footage be preserved, the subsequent email requested preservation of all communications, physical and electronic, regarding Plaintiff from December 10, 2021 and thereafter. ECF No. 121-11. Even ignoring this subsequent request, the original preservation demand identified the potential claim as centering on Plaintiff's activities between 1:30 PM and 5:30 PM on December 10, 2021, giving Defendants sufficient notice that electronic communications relating to Plaintiff during this time frame were potentially relevant to pending litigation. ECF 121-10 at 3. The Court therefore finds Defendants had sufficient notice to trigger their duty to preserve all potentially relevant text messages as of December 13, 2021.

B.     MGM Was Negligent in Preserving the Text Messages.

Although a party seeking a spoliation remedy must establish some degree of culpability, a finding of bad faith is not required to warrant an imposition of sanctions. *Brannan v. Bank of Am.*, Case No. 2:16-cv-01004-GMN-GWF, 2017 WL 4031442, at *2 (D. Nev. Sep. 13, 2017) (citing *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 627 (C.D. Cal. 2013). Within the Ninth Circuit, many courts have found that even "negligent destruction of evidence may, in the proper circumstances, warrant some form of sanction." *Reinsdorf*, 296 F.R.D. at 627-628 (collecting cases). Indeed, in the context of ESI, Rule 37(e) provides for sanctions of differing severity depending on whether intent to deprive has been established. Fed. R. Civ. P. 37(e)(1)-(2).

Defendants argue that there was no culpable state of mind associated with the unavailability of the relevant texts, offering technological issues as an "innocent explanation" for their loss. ECF No. 135 at 7, 16. Defendants further assert that "there is no evidence that the missing text messages at issue were the result of … willful or reckless conduct." *Id.* at 16.

The Court is not persuaded by these arguments. As explained above, the culpable state of mind element of a spoliation claim includes negligence in addition to willfulness and recklessness. Indeed, if negligence were not a valid basis for awarding sanctions for destruction of ESI, then Rule

1  37(e)(1)'s authorization of appropriate sanctions where there is no showing of intent to deprive
2  would be void of meaning.

3  Defendants identify the supposed technological issues by reference to Reboton and
4  Manacher's testimony that their text messages from the afternoon in question were lost as a result
5  of transferring phones and an automatic deletion function, respectively. ECF No. 135 at 16.
6  However, even accepting this as true, failure to direct employees to disable any automatic deletion
7  is a violation of Defendants' duty to preserve, as is the failure to create a backup of any potentially
8  relevant electronic communications once the duty arises. *See Youngevity Int'l v. Smith*, Case No.
9  3:16-cv-704-BTM-JLB, 2020 WL 7048687, at *2 (S.D. Cal. July 27, 2020) ("Defendants' failure to
10 prevent destruction by backing up their phones' contents or disabling automatic deletion functions
11 was not reasonable because they had control over their text messages and should have taken
12 affirmative steps to prevent their destruction when they became aware of their potential relevance.").

13 Defendants point to the fact that they circulated a litigation hold to various custodians upon
14 receiving Plaintiff's preservation demand as evidence that they did not act with a culpable state of
15 mind. ECF No. 135 at 16. However, it is the failure to direct IT professionals or the employees
16 themselves to disable automatic deletion functions and or to backup text messages from the relevant
17 time period that warrants a finding of negligence. A litigation hold, by itself, "is only reasonable to
18 the extent it facilitates preservation of ESI." *Youngevity Int'l*, 2020 WL 7048687 at *3.

19 Because the Court finds that Defendants acted with negligence, but does not find they acted
20 with intent to deprive, the Court's discretion in imposing sanctions is limited to those allowed by
21 Rule 37(e)(1), which permits only those sanctions necessary to cure the prejudice to the moving
22 party.

23 C. Plaintiff Suffers at Least Some Prejudice from the Destruction of the Text Messages.
24 Once a court concludes the spoliating party had a duty to preserve and a sufficient state of
25 mind to allow for sanctions, the moving party "must also show that the evidence would have been
26 helpful in proving its claims or defenses." *Reinsdorf*, 296 F.R.D. at 627 (quoting *Pension Comm. of*
27 *the Univ. of Montreal Pension Plan v. Banc of America Securities, LLC*, 685 F.Supp. 2d 456, 467
28 (S.D. N.Y. 2010)).

1    Defendants argue that Plaintiff suffers no prejudice from the loss of the text messages in
2 question because they are irrelevant to all of Plaintiff's claims and defenses. ECF No. 135 at 10-16.
3 Defendants support this argument by pointing to text logs that show only three messages were
4 exchanged between Reboton and Manacher after Reboton's supposed remark about Plaintiff's
5 behavior but prior to the approval of additional markers. *Id.* at 14. As Defendants further explain
6 by referencing surveillance footage and Plaintiff's timeline of events, these text messages occurred
7 after Plaintiff had executed the second marker for an additional $1 million but before he executed
8 the third for an additional $500,000. *Id.* at 14-15 (citing ECF No. 64). As the record shows, Plaintiff
9 never spent this final $500,000 line of credit. *Id.* at 26. Defendants therefore assert that the text
10 messages at issue do not relate to any losses actually incurred by Plaintiff, and thus are irrelevant to
11 whether Defendants breached a duty to Plaintiff. *Id.* at 15.

12    While the Court agrees that the facts surrounding the missing text messages tend to lessen
13 the potential prejudice Plaintiff may have suffered from their loss, the Court nonetheless takes two
14 issues with Defendants' arguments. First, contrary to Defendants' assertion, evidence that MGM
15 employees continued to extend Plaintiff credit despite awareness of his intoxicated state is
16 potentially probative of whether Defendants breached a duty towards Plaintiff. The fact that the
17 subsequent extension of credit was never used would go to what, if any, damages Plaintiff suffered
18 if negligence is found. Second, because the text messages were lost, it is impossible to know with
19 certainty that they did not, by way of example only, include comments indicating Reboton was aware
20 of Plaintiff's inebriated state well before the relevant texts were sent. It is this loss and the possibility
21 that the text messages favored Plaintiff that renders the loss of the text messages prejudicial.

22    Defendants also argue that the missing text messages have no potential relevance to
23 Plaintiff's intoxication defense because Plaintiff failed to promptly disaffirm his debt and in fact
24 ratified it by continuing to take out credit and gamble on December 11 and 12, 2021. *Id.* at 11-12.
25 Plaintiff responds by asserting that his preservation demand on December 13, 2021, served as a
26 prompt disavowal of the validity of his gambling debt. ECF No. 147 at 9. Defendant is correct that
27 under Nevada law, an intoxication defense to a contract claim seeking to collect a gambling debt can
28 only be established when "the intoxicated person … act[s] promptly to disaffirm" the debt.

7

*LaBarbera v. Wynn Las Vegas, LLC*, 422 P.3d 138, 141 (Nev. 2018) (citing Restatement (Second) of Contracts § 16 cmt.). However, the Court finds whether Plaintiff acted with sufficient promptness in disaffirming his debt to be a factual question inappropriate for resolution at this stage of litigation. *See Wynn Las Vegas, LLC v. Tofani*, Case No. 69936, 2017 WL 6541827, at *1 (Nev. Ct. App. Dec. 14, 2017) ("[W]hether [plaintiff] affirmed the full amount of debt claimed by Wynn, and whether he disaffirmed the debt 'within a reasonable time,'" are factual determinations.). Because the validity of Plaintiff's defense cannot be determined at this stage, the Court finds it is at least possible that the missing texts may have been relevant and, therefore, that Plaintiff's ability to maintain his defense has been prejudiced by their loss.

While the Court finds Plaintiff was prejudiced by the destruction of the text messages, the degree of prejudice must be determined with reference to other relevant evidence in the record. As explained above, Plaintiff contends he is prejudiced by the destruction of the text messages at issue because "Manacher's and Reboton's knowledge of [Plaintiff's] addled state at the time they approved large credit increases … is the very essence of [his] allegations." ECF No. 147 at 7. Yet, Defendants do not seem to dispute that these two employees were aware of Plaintiff's intoxication when additional credit was extended. In their Response, Defendants acknowledge Reboton's testimony that "she texted Mr. Manacher that Manley 'looked drunk' or 'wasted,' and also communicated about Manley's credit line increase request." ECF No. 135 at 14, 49 (cleaned up). Manacher similarly testified Reboton informed him via text that Plaintiff was intoxicated. *Id.* at 42.

Given Defendants' acknowledgement that the missing texts contained comments on Plaintiff's inebriated state around the time the additional markers were signed, which supports what Plaintiff describes as "the very essence" of his claims, the missing texts would likely only offer further confirmation of this fact and at least potentially offer some more detail regarding the extent of the employees' knowledge. While this is a slim possibility on which to base a motion for sanctions, the Court finds that Plaintiff suffers some prejudice as a result of Defendants' failure to preserve the missing text messages.

### IV. Remedy

Because the Court finds Defendants did not act with intent to deprive Plaintiff of use of the missing text messages, the Court lacks the discretion to impose any of the sanctions specified under Rule 37(e)(2), which therefore precludes imposition of an adverse jury instruction. The Court nonetheless concludes that because Plaintiff established that Defendants' negligence resulted in the destruction of potentially relevant evidence, and that Plaintiff suffers some prejudice to his ability to prove his claims, the Court finds the following sanctions are appropriate.

As explained above, under Rule 37(e)(1), any sanction imposed against a party that fails to take reasonable steps to preserve ESI cannot be greater than that necessary to cure the prejudice suffered by Plaintiff. The Advisory Committee provides as an example of an appropriate measure under this Rule "permitting the parties to present evidence and argument to the jury regarding the loss of information." Fed. R. Civ. P. 37(e)(1), Advisory Committee Note to the 2015 amendment. Indeed, this is the sanction that the court in *Youngevity Int'l*, another case involving negligent failure to preserve text messages, found appropriate. 2020 WL 7048687 at *5. After careful consideration, the Court finds that the *Youngevity* sanction is appropriately awarded here.

Finally, the Court has the discretion to award attorney's fees against the spoliating party as compensation for costs incurred in preparing a Motion for Adverse Jury Instructions. *Spencer v. Lunada Bay Boysr*, 806 Fed.Appx. 564, 568 (9th Cir. 2020). The Court finds doing so appropriate here, and directs Plaintiff to file a memorandum with documentation supporting the requested fees and costs within twenty-one days of the date of this Order.

### V. ORDER

Accordingly, and based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's Motion for Adverse Inference Jury Instruction (ECF No. 121) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Plaintiff is permitted to present evidence and argument to the jury regarding the loss of information allowing the jury to draw reasonable inferences from this argument. This does not preclude Defendants from making counter arguments seeking alternative inferences.

      IT IS FURTHER ORDERED that Plaintiff is awarded reasonable attorneys' fees incurred in connection with preparing the Motion for Sanctions and Reply. Plaintiff must file a memorandum supporting the requested fees and costs, which must address the local rules and Ninth Circuit case law regarding such awards. The memorandum **must** be filed no later than twenty-one days of the entry of this Order. Defendants may respond no later than fourteen (14) days after the memorandum is filed. No reply is permitted.

      DATED this 15th day of May, 2025.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE