Lawrence J. Semenza, III, Esq., Bar No. 7174
Email: ljs@semenzarickard.com
Katie L. Cannata, Esq., Bar No. 14848
Email: klc@semenzarickard.com
SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone:  (702) 835-6803
Facsimile:   (702) 920-8669

Bethany Woodard Kristovich, Esq. (*pro hac vice*)
E-mail: bethany.kristovich@mto.com
John Schwab, Esq. (*pro hac vice*)
Email: john.schwab@mto.com
Alexander Yusuf, Esq. (*pro hac vice*)
E-mail: sasha.yusuf@mto.com
MUNGER TOLLES & OLSON, LLP
350 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 683-9216

*Attorneys for Defendant MGM Resorts International
& Defendant/Counterclaimant MGM Grand Hotel, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DWIGHT MANLEY,<br><br>                    Plaintiff,<br><br>v.<br><br>MGM RESORTS INTERNATIONAL; MGM GRAND HOTEL, LLC,<br><br>                    Defendants.<br><br>―――――――――――――<br><br>MGM GRAND HOTEL, LLC, a Nevada limited liability company,<br><br>                    Counterclaimant,<br><br>v.<br><br>DWIGHT MANLEY, an individual,<br><br>                    Counter-Defendant. | Case No.   2:22-cv-01906-MMD-EJY<br><br>**MOTION TO STRIKE PLAINTIFF DWIGHT MANLEY'S PUNITIVE DAMAGES REQUEST AND/OR TO PRECLUDE PLAINTIFF FROM SEEKING PUNITIVE DAMAGES AT THE TIME OF TRIAL** |

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

Defendant MGM Resorts International ("MGM Resorts") and Defendant/Counterclaimant MGM Grand Hotel, LLC ("MGM Grand") (together, "Defendants"), hereby move to strike Plaintiff Dwight Manley's punitive damages request and/or to preclude him from seeking punitive damages at the time of trial.

This Motion is based upon the following Memorandum of Points and Authorities, the attached exhibits, the declaration of counsel, the papers and pleadings on file with the Court, and any oral argument the Court wishes to entertain.

DATED this 29th day of June, 2026

SEMENZA RICKARD LAW

*/s/ Lawrence J. Semenza, III*
Lawrence J. Semenza, III, Esq., Bar No. 7174
Katie L. Cannata, Esq., Bar No. 14848
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

MUNGER TOLLES & OLSON, LLP
Bethany Woodard Kristovich, Esq. (*pro hac vice*)
John Schwab, Esq. (*pro hac vice*)
Alexander Sunny Yusef, Esq. (*pro hac vice*)
350 South Grand Avenue
Los Angeles, California 90071

*Attorneys for Defendant MGM Resorts International & Defendant/Counterclaimant MGM Grand Hotel, LLC*

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

56261239.4

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Defendants hereby seek to (1) strike from the Third Amended Complaint ("TAC") Plaintiff's request for punitive damages and/or (2) preclude him from seeking punitive damages at the time of trial, given that Plaintiff lacks any claims, or any evidence, to support a punitive remedy. When Plaintiff filed the TAC, he added a new claim for tortious breach of the implied covenant, and added request for punitive damages in connection with that new claim. Because the tortious-breach claim has now been dismissed, Plaintiff has not pled any conduct sufficient to support punitive damages.

Nor can Plaintiff amend now. Discovery is closed and Plaintiff has no evidence to support a punitive award against Defendants. NRS 42.007 bars punitive damages against a corporate employer based on an employee's alleged misconduct absent proof that an officer, director, or managing agent directed or ratified the conduct. No such evidence exists.

For these reasons, and those discussed below, Defendants respectfully request that the Court preclude Plaintiff from seeking punitive damages at trial, and/or strike the request for punitive damages from the prayer for relief in the TAC.

## II.    BACKGROUND

The Court is familiar with the facts and procedural history of this case. Defendants therefore summarize only the background relevant to this Motion. Plaintiff's original Complaint asserted claims for declaratory relief, negligence, unfair trade practices, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. (ECF No. 1.) Plaintiff did not seek punitive damages. (*Id.*) Nor did he seek punitive damages in his First Amended or Second Amended Complaints. (ECF Nos. 7, 31.) That changed with the TAC, in which Plaintiff added claims for tortious breach of the implied covenant of good faith and fair dealing and negligence per se, and—for the first time—sought punitive damages. (ECF No. 64 ¶ 112.) The TAC explicitly and exclusively premises Plaintiff's new request for punitive damages to his newly asserted tortious-bad-faith claim. (*Id.*)

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

The TAC's claims have been narrowed substantially. The Court dismissed Plaintiff's tortious-bad-faith claim, meaning the sole claim on which Plaintiff sought punitive damages is no longer part of this case. (*See* ECF No. 114.) The Court also dismissed Plaintiff's negligence-per-se claim. (*Id.*) The Court later granted summary judgment to Defendants on Plaintiff's unfair-trade-practices claim. (ECF Nos. 215, 221 at 38:14–16.) And, with respect to Plaintiff's negligence claim, the court granted summary judgment to Defendants on Plaintiff's alternative theory that a third-party contaminated his drink, leaving Plaintiff with only his original theory that the bartender who made his cocktail contaminated it. (ECF No. 234.)

The parties met and conferred regarding Plaintiff's intent to seek punitive damages at trial following the dismissal of his tortious-bad-faith claim but were unable to resolve this issue. (Declaration of Lawrence J. Semenza, III, Esq., ¶ 2, attached hereto as Exhibit 1.)

As discussed below, the Court should strike Plaintiff's request for punitive damages, and/or preclude him from seeking punitive damages at trial, for at least two independent reasons. First, punitive damages are unavailable to Plaintiff because the only claim to which he ever attached a request for punitive damages—his claim for tortious breach of the implied covenant of good faith and fair dealing—was dismissed. Second, even if punitive damages could be predicated on Plaintiff's remaining claims, NRS 42.007 would bar such relief because no officer, director, or managing agent of Defendants directed or ratified the bartender's alleged conduct on Defendants' behalf.

## III.    ARGUMENT

### A.    The Court Has Already Dismissed the Sole Claim for Which Plaintiff Pled Punitive Damages, and As Such, His Request Should Be Stricken

"[A] motion to strike may be used to strike any part of a prayer for relief where the requested damages are not recoverable as a matter of law." *Jariwala v. Enter. Leasing Co.-W., LLC*, No. 2:20-cv-01550-APG-DJA, 2018 WL 4839231, at *2 (D. Nev. Sept. 17, 2018) (subsequent history omitted) (citation omitted). "Whether to grant a motion to strike lies within the discretion of the district court." *Id.* at *1.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

"[P]unitive damages are a remedy, not a cause of action." *Baker v. Transdev United States*, No. 2:24-CV-02411-GMN-EJY, 2026 WL 371531, at *3 (D. Nev. Feb. 6, 2026). Because punitive damages are intended to punish and deter particularly egregious misconduct—not to compensate for injury—they are reserved for limited circumstances. *Madrigal v. Treasure Island Corp.*, No. 2:08-CV-01243-PMP-GWF, 2008 WL 11389168, at *4 (D. Nev. Dec. 30, 2008). Punitive damages may be awarded only when tortious conduct is accompanied by "oppression, fraud or malice, express or implied." *Bonavito v. Nevada Prop. 1 LLC*, No. 2:13-CV-417-JAD-CWH, 2014 WL 1347051, at *1 (D. Nev. Apr. 2, 2014); *see also* NRS 42.005.

"[A] plaintiff must plead facts to support an award of punitive damages to maintain a prayer for them in his complaint and to pursue them at trial." *Baker v. Transdev United States*, 2:24-CV-02411-GMN-EJY, 2026 WL 371531, at *3 (D. Nev. Feb. 6, 2026) (citation omitted).

Here, Plaintiff sought punitive damages only in connection with his tortious breach claim. (TAC ¶ 112.) Because Plaintiff himself did not even attempt to plead punitive damages with respect to any of his other claims, and because his tortious breach claim as now been dismissed, his request for punitive damages should be stricken. *Cf. Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1124 (9th Cir. 2023) (holding punitive damages unavailable where "no claim remains . . . to which punitive damages could attach").

**B.    NRS 42.007 Precludes Punitive Damages on This Record**

Plaintiff also cannot replead the TAC to assert a new claim for punitive damages. Plaintiff's core remaining theory is that he was drugged by the bartender, Jerilyn Koch ("Ms. Koch"), which caused him to become incapacitated before he increased his line of credit with Defendants and then gambled and lost with that credit. Ms. Koch did not drug Plaintiff and Plaintiff's assertion to the contrary is baseless, offensive, and vehemently denied by Ms. Koch, and by Defendants. But to be entitled to punitive damages against Defendants based on Ms. Koch's alleged conduct, Plaintiff would need to satisfy the requirements of NRS 42.007, which circumscribes the availability of punitive damages against a corporation based on the acts of an employee. Plaintiff cannot meet any of the statute's requirements, much less all of them.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

As an initial matter, there is no evidence that Ms. Koch was an employee of Defendant MGM Resorts.  The only evidence is that she was employed by Defendant MGM Grand.  (*See* Portions of Jerilyn Koch's March 28, 2024 Deposition Transcript, 17:20-18:2, the relevant portions of which are attached hereto as Exhibit 2.)  Punitive damages premised on Ms. Koch's purported actions cannot be awarded against MGM Resorts.  *See generally* NRS 42.007.

Plaintiff cannot seek punitive damages against MGM Grand, either.  To do so, he must show that "an officer, director or managing agent of the corporation who was expressly authorized to direct or ratify the employee's conduct on behalf of the corporation" either "(a) ... had advance knowledge that the employee was unfit for the purposes of the employment and employed the employee with a conscious disregard of the rights or safety of others; (b) ... expressly authorized or ratified the wrongful act of the employee for which the damages are awarded; or  (c) … is personally guilty of oppression, fraud or malice, express or implied." *Id*.

*First,* there is no evidence that Ms. Koch was "unfit for the purposes of [her] employment," much less that any officer of Defendants had "advance knowledge" of any lack of fitness.  NRS 42.007(a).

*Second,* there is also no evidence that any officer, director, or managing agent of Defendants is "personally guilty" of any of the alleged conduct that might give rise to punitive damages.  NRS 42.007(b).  Ms. Koch is not a director or officer of Defendants.  Nor can she be considered a managing agent.  "Determining an individual's managerial capacity depends on 'what the individual is authorized to do by the principal and whether the agent has the discretion as to what is done and how it is done.'" *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 258 (Nev. 2008).  "Determining who is a managing agent does not turn on the employee's title as a manager or supervisor. . . .  Rather, an employee is a managing agent if the employee has discretion and control over an area of the business sufficient to set policy for the business." *Thomas v. Russel*, 3:24-CV-00357-MMD-CLB, 2026 WL 483346, at *4 (D. Nev. Feb. 20, 2026).  Where an employee does not have discretion to deviate from established policy, that employee is not a managing agent. *Id.*; *see also Nittinger v. Holman*, 119 Nev. 192, 69 P.3d 688, 691–92

(Nev. 2003) (en banc). There is no evidence that Ms. Koch had any discretion in executing her job as a bartender.

*Third*, and finally, there is no evidence that any officer, director, or managing agent directed Ms. Koch to contaminate Plaintiff's drink, or "ratified" her alleged conduct after it had occurred. NRS 42.007(b). Indeed, when Ms. Koch was asked at her deposition about her interactions with Plaintiff's casino host, Vanessa Reboton, Ms. Koch testified that she had not even met Ms. Reboton until the day before the deposition. (Ex. 2 at 30:5-10). Ms. Reboton, in turn, testified that she did not know Ms. Koch. (Portions of Vanessa Reboton's March 27, 2024 Deposition Transcript, 37:8-8, a true and correct copy is attached hereto as Exhibit 3.) Ms. Koch was not asked about her interactions with Justin Manacher, the President of Casino Marketing, but Mr. Manacher testified unequivocally that he had never met Ms. Koch and never spoken to her. (Portions of Justin Manacher's April 24, 2024 Deposition Transcript, 28:8-12, a true and correct is attached hereto as Exhibit 4).

Because Plaintiff cannot satisfy NRS 42.007, he cannot seek punitive damages against Defendants.

///
///
///
///
///
///
///
///
///
///
///
///
///
///

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

## IV.    CONCLUSION

Based upon the foregoing, Defendants respectfully request that the Court grant this Motion and strike Plaintiff's request for punitive damages from the prayer of relief in the TAC and/or preclude him from seeking punitive damages at trial.

DATED this 29th day of June, 2026.

SEMENZA RICKARD LAW

*/s/ Lawrence J. Semenza, III*
Lawrence J. Semenza, III, Esq., Bar No. 7174
Katie L. Cannata, Esq., Bar No. 14848
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

MUNGER TOLLES & OLSON, LLP
Bethany Woodard Kristovich, Esq. (*pro hac vice*)
John Schwab, Esq. (*pro hac vice*)
Alexander Yusuf, Esq. (*pro hac vice*)
350 South Grand Avenue
Los Angeles, California 90071

*Attorneys for Defendant MGM Resorts International & Defendant/Counterclaimant MGM Grand Hotel, LLC*

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

56261239.4

8

**SEMENZA RICKARD LAW**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

## CERTIFICATE OF SERVICE

I am employed by the law firm of Semenza Rickard Law in Clark County, Nevada. I am over the age of 18 and not a party to this action. The business address is 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145.

I hereby certify that on the 29th day of June 2026, I served the document(s), described as:

**MOTION TO STRIKE PLAINTIFF DWIGHT MANLEY'S PUNITIVE DAMAGES REQUEST AND/OR TO PRECLUDE PLAINTIFF FROM SEEKING PUNITIVE DAMAGES AT THE TIME OF TRIAL**

☒    by placing the ☐ original ☒ a true copy thereof enclosed/attached and delivered:

☒  a.  via **ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

**PRHLAW LLC**
Charles H. McCrea, charles@prhlawllc.com, tlc@hmlawlv.com
Paul R. Hejmanowski, paul@prhlawllc.com, tc@hmlawlv.com
-
**MADEL PA**
Christopher W. Madel, Esq. (*pro hac vice*), cmadel@madellaw.com
Jennifer M. Robbins, Esq. (*pro hac vice*), jmrobbins@madellaw.com,
6815994420@filings.docketbird.com, madelpafile@madellaw.com
*Attorneys for Plaintiff*

☐b.  **BY U.S. MAIL.** I deposited such envelope in the mail at Las Vegas, Nevada. The envelope(s) were mailed with postage thereon fully prepaid. I am readily familiar with Semenza Rickard Law's practice of collection and processing correspondence for mailing. Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at Las Vegas, Nevada in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

☐  c.  **BY PERSONAL SERVICE.**

☐  d.  **BY DIRECT EMAIL**

☐  e.  **BY FACSIMILE TRANSMISSION.**

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Olivia A. Kelly*
An Employee of Semenza Rickard Law

56261239.4                                           9

# EXHIBIT 1

# EXHIBIT 1

<u>**DECLARATION OF LAWRENCE J. SEMENZA, III, ESQ. IN SUPPORT OF MOTION TO PRECLUDE PLAINTIFF DWIGHT MANLEY FROM SEEKING PUNITIVE DAMAGES AT THE TIME OF TRIAL**</u>

I, LAWRENCE J. SEMENZA, III, state and declare as follows:

1.     I am a Shareholder with Semenza Rickard Law, counsel for Defendants MGM Grand Hotel, LLC ("MGM Grand") and MGM Resorts International ("MGM Resorts") (together, "Defendants").  I make the following Declaration in support of Defendants' Motion to Preclude Plaintiff Dwight Manley ("Manley") from Seeking Punitive Damages at the Time of Trial (the "Motion").  I have personal knowledge of the facts contained in this Declaration and if called to do so, would testify competently thereto.

2.     On May 14, 2026, the parties attended the in-person depositions of Ronald Buono and Chris Durlej ("Mr. Durlej").  At the conclusion of Mr. Durlej's deposition, I met and conferred with Plaintiff's counsel – Paul R. Hejmanowski, Esq. and Christopher W. Madel, Esq. – about whether Plaintiff would agree to not seek and/or argue for punitive damages at the forthcoming trial in this matter.   During our discussion, I asserted that because the Court recently limited Plaintiff's negligence theory of liability to an alleged drugging by an MGM Grand bartender, he could not proceed with a claim for punitive damages.  I additionally cited NRS 42.007 and noted that the statute would preclude an award of punitive damages in this matter. Mr. Hejmanowski and Mr. Madel did not agree, and instead confirmed that Plaintiff intends to seek punitive damages at trial.  As such, I informed Mr. Hejmanowski and Mr. Madel that Defendants would move to preclude the same.

3.     It is my understanding that Mr. Hejmanowski and Mr. Madel agreed that our May 14, 2026 discussion constituted a sufficient meet and confer conference for purposes of Defendants' Motion.

4.     Attached to Defendants' Motion as Exhibit 2 is a true and correct copy of Portions of Jerilyn Koch's March 28, 2024 Deposition Transcript.

5.     Attached to Defendants' Motion as Exhibit 3 is a true and correct copy of Portions of Vanessa Reboton's March 27, 2024 Deposition Transcript.

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

1

6.      Attached to Defendants' Motion as Exhibit 4 is a true and correct copy of Portions of Justin Manacher's April 24, 2024 Deposition Transcript.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

DATED this 29th day of June 2026.

/s/ Lawrence J. Semenza, III
LAWRENCE J. SEMENZA, III

SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

2

# EXHIBIT 2

# EXHIBIT 2

# Dwight Manley

## v.

# MGM Resorts International, et al.

## Transcript of

# Jerilyn Koch

## Volume I

## March 28, 2024



**Our Services**

- Court Reporting
- Record Retrieval
- Legal Talent Outsourcing
- Registered Agent
- Process Services
- Investigations
- eLaw® Case Tracking
- Alternative Dispute Resolutions

lexitaslegal.com | 702-476-4500

Jerilyn Koch                                    Dwight Manley v. MGM Resorts International, et al.

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DWIGHT MANLEY,                          )
                                       )
                 Plaintiff,            )
                                       )    Case No.
vs.                                    )    2:22-cv-01906-
                                       )    MMD-DJA
MGM RESORTS INTERNATIONAL;             )
MGM GRAND HOTEL, LLC,                   )
                                       )
                 Defendants.           )
_____        )
AND ALL RELATED ACTIONS.               )
_____        )

VIDEOTAPED DEPOSITION OF JERILYN KOCH

Taken on Thursday, March 28, 2024

By a Certified Court Reporter and Legal Videographer

At 9:56 a.m.

At 400 South Seventh Street, Suite 400

Las Vegas, Nevada 89101

Reported by:  Sarah Safier, CCR No. 808
Job No. 56325, Firm No. 116F

Jerilyn Koch

Dwight Manley v. MGM Resorts International, et al.

14

A    No.

Q    Have you ever been charged with committing a felony?

A    No.

Q    Okay.  Have you ever been written up or reprimanded in your employment?

A    Yes.

Q    When?

A    The first time was probably in 2018.

MR. SEMENZA:  Are you referring to the MGM Grand, your employment at the MGM Grand?

THE WITNESS:  Yes.

MR. SEMENZA:  Is that what you were intending to ask?

MR. HEJMANOWSKI:  Yes.  Thank you.

BY MR. HEJMANOWSKI:

Q    What was the write-up for?

A    I was exiting the bar at the end of my shift.  I had all of my belongings, my money, everything.  I left the bar.  As I was leaving, a guest asked me for something and when I returned behind the bar with all of my things, I was told that I should have just walked away because I was already done and I had my personal stuff with me, so I should have just continued to walk.

15

Q    Okay.  You shouldn't have had your personal stuff behind the bar?

A    No, I shouldn't have engaged with a guest while I had my stuff on me.  I should have just continued to walk and ignored them and had somebody else that was taking my place take care of them instead.

Q    What was the next time you were reprimanded?

A    Probably 2021.

Q    And what was that for?

A    I was reading a book.

Q    Behind the bar?

A    Correct.

Q    That was your personal book?

A    Yes.

Q    And what were you told was wrong with that?

A    I wasn't permitted to read a book.  If I wanted to read, I could read the newspaper.

Q    Okay.  Were you reprimanded any more?

A    No.

Q    Okay.  Just the two events?

A    (Witness nods head.)

Q    What is your -- was your compensation at the MGM in December of 2021?

A    Compensation?

16

Q    Payment.  Pay.

A    I get an hourly wage and then I make tips.

Q    What is your hourly wage?

A    At that time, probably about 17 or so dollars per hour.

Q    Okay.  And now when we talk about tips, are you in some form of tip pooling?

A    It depends on the location that I'm working.

Q    Well, at the MGM, are your tips pooled?

A    It depends on the location that I'm working in the MGM.

Q    So if you're in the VIP bar, are those tips pooled?

A    No.

Q    And so whatever tips you get, you keep?

A    Most of them.

Q    What happens the other time?

A    Sometimes I have to tip out other employees that help me.

Q    Okay.  So you may choose to share with somebody else?

A    Correct.

Q    Okay.  When you're tipped and you're working the VIP bar, where do the tips go when you get them?

A    That depends on what kind of tip it is.

17

Q    Well, let's just start out and assume it's cash.

A    Cash?  It would go in a tip jar.

Q    Okay.  There's a tip jar on the bar?

A    Yeah, it's usually a metal cup or a glass right there.

Q    Okay.  And if it's chips?

A    It would go in that cup.

Q    What other kind of tip could you get?

A    Credit card tips.

Q    Okay.

A    Tips on room charges.

Q    Okay.  And that would just be documented just like a payment for a cocktail would be documented?

A    Uh-huh.

Q    That's yes?

A    Yes.

Q    Thank you.

Which MGM entity employed you in December of 2021?

A    The beverage department.

Q    Okay.  Do you know what company wrote your paycheck?

A    The MGM Grand.



www.lexitaslegal.com

702-476-4500

Jerilyn Koch                                      Dwight Manley v. MGM Resorts International, et al.

18

Q    That's all you know?
A    Yeah.
Q    Do you have a written employment contract with the MGM Grand?
A    I had to sign that I was accepting the job.
Q    Anything else?
A    Not that I'm aware of.
Q    Okay.  Do you know what ketamine is?
A    I've been told what it is.
Q    Who told you?
A    When I was interviewed.
Q    When you first went to work at the MGM?
A    No.
Q    Okay.  Interviewed by whom?
A    By, I believe, the Nevada Gaming Control Board.
Q    And when was that?
A    That was in May or June of 2022.
Q    '22?
A    Uh-huh.
Q    Okay.  Were you interviewed by anyone else?
A    No.
Q    Now, you know the event that we're talking about took place on Friday, December 10, 2021; and during the course of the deposition, if I may, I'll

19

just refer to it as December 10th.  Okay?
A    Okay.
Q    And you will know what I mean?
A    Okay.
Q    When was the first time anyone interviewed you following December 10th about the events involving ketamine?
A    That would be May or June of 2022.
Q    No one from the MGM interviewed you before that?
A    No, sir.
Q    Were you ever a participant in any form of investigation by MGM employees for the ketamine event?
A    No, sir.
Q    Do you have any theories or suspicions as to how ketamine found its way into Mr. Manley's cocktail?
MR. SEMENZA:  Objection.  Assumes facts.  Calls for speculation.
BY MR. HEJMANOWSKI:
Q    You may answer.
A    No.
Q    Have you given any thought to it?
A    No.

20

Q    Did anybody ask you for -- if you had a theory or speculation as to how it happened?
MR. SEMENZA:  I'm going to object to the extent that it would involve any attorney-client privileged communications.
So outside of any of your discussions with counsel, you can respond to that question.
THE WITNESS:  Can I hear it again?
BY MR. HEJMANOWSKI:
Q    Sure.  Did anyone -- including counsel, but don't tell me what you said to counsel or what counsel said to you -- did anyone ask you if you had a theory as to how ketamine would have found its way into Mr. Manley's cocktail?
A    No.
Q    No one's asked you?
A    No.
Q    And the only one who's interviewed you about that topic would have been the Nevada Gaming Control Board?
A    I believe that's who it was, yes.
Q    Do you recall the agent?
A    No.
Q    Did anyone from the Metropolitan Police Department interview you?

21

A    No.
Q    Did any private investigator interview you?
A    No.
Q    So I'm the first one?
A    Congratulations.
Q    You're familiar with the term date-rape drugs?
A    Yes.
Q    As a bartender, what steps do you expect to take to protect patrons against date-rape drugs?
MR. SEMENZA:  Objection to the extent it calls for a legal conclusion.
MR. HEJMANOWSKI:  You may answer.
MR. SEMENZA:  And just one more objection.  Assumes that there's an obligation.
THE WITNESS:  I'm sorry.  Can you ask me again?
BY MR. HEJMANOWSKI:
Q    Sure.  What I'm really trying to find out is, as a bartender, what do you do to protect patrons from the threat of date-rape drugs being introduced into their cocktails?
A    I believe, you know, you want to keep your head on a swivel at all times.  You always want to make sure that you're in communication with your



Jerilyn Koch

Dwight Manley v. MGM Resorts International, et al.

30

there can be, you know, fruity drinks, things that are a little bit floofy. And there's, you know, just like you would go into any restaurant and they have a drink menu, that's what it would be.

Q   Do you know Vanessa Reboton?

A   I met her yesterday.

Q   At what occasion?

A   Out here in the lobby.

Q   Okay. You haven't met her before?

A   No, sir.

Q   What is the size of the cocktail glasses that you used at the Mansion?

A   There's three different -- from what I remember, there's three different size glasses in the Mansion.

Q   What are those?

A   You have a small, about five-ounce glass. Then the next size up would probably be the 10-ounce glass, and then a 12-ounce glass.

Q   Nothing larger than a 12?

A   Or a pint glass maybe for beer, if someone wanted a cold glass with their beer.

Q   What size glass do you use for the old fashioneds?

A   A 10.

31

Q   What is the -- if you know, what is the alcohol content of an old fashioned as prepared at the Mansion?

A   The content, most bourbons are about, I would say, 40 percent alcohol.

Q   Okay. And how many ounces of bourbon would go into an old fashioned at the Mansion bar?

A   An ounce and a half.

Q   One and a half?

A   Uh-huh.

Q   That's yes?

A   Yes.

Q   And do you measure that by a --

A   Jigger.

Q   Jigger?

A   Uh-huh.

Q   Are you permitted to free pour?

A   Yes, but it's frowned upon.

Q   Now, the cocktail that you prepared for Mr. Manley --

A   Mm-hm.

Q   -- was only one cocktail.

A   Okay.

Q   And we will look at the video in a bit. You didn't observe him at the time he ordered a cocktail,

32

did you?

MR. SEMENZA: Objection. Calls for -- assumes facts.

You can go ahead and answer.

THE WITNESS: I never met him before.

BY MR. HEJMANOWSKI:

Q   Okay. I'll introduce you to Dwight Manley.

A   Nice to meet you.

Q   Do you recall the event where the cocktail was ordered for Mr. Manley?

A   Only what I saw on video.

Q   When did you see the video?

A   Yesterday.

Q   Okay. What part of the video did you see?

A   About eight minutes.

Q   Okay. And who was with you when you were looking at the video?

A   These two.

MR. HEJMANOWSKI: Let the record reflect she is referring to counsel.

THE WITNESS: Yes.

BY MR. HEJMANOWSKI:

Q   Okay. Was that the first time you saw the video?

A   Yes.

33

Q   Are you familiar with the TAM program?

A   Yes.

Q   Have you taken the TAM course?

A   Yes.

Q   Do you have a TAM card?

A   Yes.

Q   Is it current?

A   Yes.

Q   When was the last time you had a refresher on the TAM course?

A   I expire this year, towards the end of the year, so it would be almost four years.

Q   How often do you think you're supposed to update your TAM card?

A   It's every four years.

Q   Every four years, and that's based on what?

A   That's their recommendation.

Q   Their, being the TAM organization?

A   Yes.

Q   Do you find that course to be helpful?

A   Yes.

Q   Do you try to follow the TAM protocols?

A   Of course.

Q   Do you think the TAM manual is authoritative on alcohol management issues?

 

Jerilyn Koch

Dwight Manley v. MGM Resorts International, et al.

### 74

recorded deposition of Jerilyn Koch taken on March 28, 2024.  We are going off the video record and the time is 11:36 a.m.

THE REPORTER:  Did you want a copy of the transcript?

MR. SEMENZA:  I do.

(Thereupon, the videotaped deposition was concluded at 11:36 a.m.)

* * * * *

### 75

CERTIFICATE OF WITNESS

PAGE    LINE    CHANGE                    REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

* * * * *

I, JERILYN KOCH, witness herein, do hereby certify and declare under penalty of perjury the within and foregoing transcription to be my deposition in said action; that I have read, corrected and do hereby affix my signature to said deposition.

_____    _____
JERILYN KOCH                DATE

### 76

REPORTER'S CERTIFICATE

STATE OF NEVADA        )
                       )  SS
COUNTY OF CLARK        )

I, Sarah Safier, a duly certified court reporter licensed in and for the State of Nevada, do hereby certify:

That I reported the taking of the deposition of the witness, JERILYN KOCH, at the time and place aforesaid;

That prior to being examined, the witness was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That I thereafter transcribed my shorthand notes into typewriting and that the typewritten transcript of said deposition is a complete, true and accurate record of testimony provided by the witness at said time to the best of my ability.

I further certify (1) that I am not a relative, employee or independent contractor of counsel of any of the parties; nor a relative, employee or independent contractor of the parties involved in said action; nor a person financially interested in the action; nor do I have any other relationship with any of the parties or with counsel of any of the parties involved in the action that may reasonably cause my impartiality to be questioned; and (2) that transcript review pursuant to NRCP 30(e) was requested.

IN WITNESS WHEREOF, I have hereunto set my hand in the County of Clark, State of Nevada, this 11th day of April, 2024.

_____
SARAH SAFIER, CCR NO. 808

 

# EXHIBIT 3

# EXHIBIT 3

# Dwight Manley

## v.

# MGM Resorts International, et al.

## Transcript of

# Vanessa Reboton

## Volume I

## March 27, 2024



LEXITAS™

### Our Services

- Court Reporting
- Record Retrieval
- Legal Talent Outsourcing
- Registered Agent
- Process Services
- Investigations
- eLaw® Case Tracking
- Alternative Dispute Resolutions

lexitaslegal.com | 702-476-4500

Case 2:22-cv-01906-MMD-EJY   Document 245   Filed 06/29/26   Page 22 of 29

Vanessa Reboton                    Dwight Manley v. MGM Resorts International, et al.

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DWIGHT MANLEY,                    )
                                 )
                    Plaintiff,   )
                                 )      Case No.
vs.                              )      2:22-cv-01906-
                                 )      MMD-DJA
MGM RESORTS INTERNATIONAL;       )
MGM GRAND HOTEL, LLC,            )
                                 )
                    Defendants.  )
_____ )
AND ALL RELATED ACTIONS.         )
_____ )

VIDEOTAPED DEPOSITION OF VANESSA REBOTON

Taken on Wednesday, March 27, 2024

By a Certified Court Reporter and Legal Videographer

At 9:56 a.m.

At 400 South Seventh Street, Suite 400

Las Vegas, Nevada 89101

Reported by:  Sarah Safier, CCR No. 808
Job No. 56326, Firm No. 116F

Vanessa Reboton

Dwight Manley v. MGM Resorts International, et al.

---

34

convention, you gave him something you said. What did you give him?

A   I believe it was a jersey, a signed jersey.

Q   This had something to do with a sporting event?

A   It was signed by an athlete.

Q   When you were dealing with Mr. Manley in 2018, were you engaged in what you described earlier as reactivation?

A   Yes.

Q   Bringing him back into the fold as a current customer at the MGM?

A   Yes.

Q   Were you successful?

A   Yes.

Q   Well, after that, Mr. Manley came to the MGM on a number of occasions, did he not?

A   Yes.

Q   How many times a year do you think he came?

A   I would -- if I had to guess, maybe one to two times a year.

Q   What about other MGM properties, would you help him go to the ARIA, for example, or Mandalay or someplace else?

A   Yes.  Sorry, when you say MGM, I'm thinking

---

35

the whole company.

Q   Let's address it as the whole company unless I say otherwise.

A   Okay.

Q   But be careful with that, because I'll probably screw that up myself.

So you're saying as far as you can recall, you think he came to one of the MGM properties once or twice a year?

A   Yes.

Q   Okay.  Did that become more frequent over time?

A   I would say the same.

Q   Okay.  When he came, do you recall what his credit limits were?

A   They were, I believe, around one million, typically one million up to two million.

Q   Okay.  I've seen references in the documents to something called a corporate line of credit.  What do you understand a corporate line of credit to be?

A   Where if a patron has a corporate line, they're able to pull markers at all of our properties, not just one.

Q   Okay.  What do you call it if he has a credit line at only one property?

---

36

A   Just property specific, property credit line, I guess.

Q   Okay.  What is your role, if any, in approving credit limits for a player?

A   I don't have credit authority.

Q   Do you make recommendations?

A   I can make recommendations.

Q   And who would you make the recommendation to?

A   Either our -- the person in charge of our credit team or my direct supervisor or Justin Manacher.

Q   Do you recall any role that you had in recommending credit lines for Dwight?

A   I just suggested what he was requesting when he was coming in for his trip.

Q   Is there a difference between a permanent credit line and a temporary credit line?

A   Yes.

Q   What is the difference?

A   Permanent is the amount that doesn't change. Temporary -- all corporate lines are considered temporary lines because they're not in -- they're just in for that trip.

Q   Did Mr. Manley have a permanent credit line

---

37

at the MGM?

A   On December it was a -- I believe it was a corporate line.

Q   And that corporate line would allow him to gamble against that credit line at any one of the MGM properties?

A   Yes.

Q   Do you know Jerilyn Koch, K-O-C-H?

A   No.

Q   I believe Jerilyn was the bartender on December 10th.  Does that trigger any kind of recollection?

A   No.

Q   Safe to say, then, that you don't socialize with Jerilyn?

A   I do not.

Q   Would you recognize her if you saw her?

A   No.

Q   What role, if any, did you have in ordering and delivering any of the cocktails served to Dwight on December 10th?

A   I may have ordered him a drink, but I know the group that he was in were kind of taking care of him.  So I don't -- maybe I had ordered him a drink. I don't recall that, though.

---

Vanessa Reboton                          Dwight Manley v. MGM Resorts International, et al.

130

REPORTER'S CERTIFICATE

STATE OF NEVADA      )
                     )  SS
COUNTY OF CLARK      )

        I, Sarah Safier, a duly certified court reporter licensed in and for the State of Nevada, do hereby certify:
        That I reported the taking of the deposition of the witness, VANESSA REBOTON, at the time and place aforesaid;
        That prior to being examined, the witness was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;
        That I thereafter transcribed my shorthand notes into typewriting and that the typewritten transcript of said deposition is a complete, true and accurate record of testimony provided by the witness at said time to the best of my ability.
        I further certify (1) that I am not a relative, employee or independent contractor of counsel of any of the parties; nor a relative, employee or independent contractor of the parties involved in said action; nor a person financially interested in the action; nor do I have any other relationship with any of the parties or with counsel of any of the parties involved in the action that may reasonably cause my impartiality to be questioned; and (2) that transcript review pursuant to NRCP 30(e) was requested.
        IN WITNESS WHEREOF, I have hereunto set my hand in the County of Clark, State of Nevada, this 9th day of April, 2024.

        _____
        SARAH SAFIER, CCR NO. 808



# EXHIBIT 4

# EXHIBIT 4

Dwight Manley

v.

MGM Resorts International, et al.

Transcript of

Justin Manacher

Volume I

April 24, 2024



LEXITAS™

## Our Services

- Court Reporting
- Record Retrieval
- Legal Talent Outsourcing
- Registered Agent
- Process Services
- Investigations
- eLaw® Case Tracking
- Alternative Dispute Resolutions

lexitaslegal.com | 702-476-4500

Case 2:22-cv-01906-MMD-EJY    Document 245    Filed 06/29/26    Page 27 of 29

Justin Manacher                    Dwight Manley v. MGM Resorts International, et al.

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DWIGHT MANLEY,                    )
                                 )
            Plaintiff,           )
                                 )
vs.                              )    Case No.
                                 )    2:22-cv-01906-MMD-DJA
MGM RESORTS                      )
INTERNATIONAL; MGM GRAND         )
HOTEL, LLC,                      )
                                 )
            Defendants.          )
_____  )
AND ALL RELATED ACTIONS.         )
_____  )

VIDEORECORDED DEPOSITION OF JUSTIN MANACHER

Taken on Wednesday, April 24, 2024

By a Certified Court Reporter and Legal Videographer

At 10:48 a.m.

At 400 South Seventh Street, Suite 400

Las Vegas, Nevada

Reported by:  Libby Stewart, CCR 1000, RPR

Job No. 56818, Firm No. 116F

Justin Manacher                                    Dwight Manley v. MGM Resorts International, et al.

26

Bandon Dunes?
   A.   I've been there before.  Yeah.
   Q.   As a company event?
   A.   I believe so.
   Q.   Okay.  More than once?
   A.   I don't know.  I'd have to check.
   Q.   Do you have -- do you have lists?
   A.   I don't personally.  No.
   Q.   Are there records of these trips kept?
   A.   I don't know.
   Q.   Passenger manifests, for example?
   A.   Should be.
   Q.   On the trips that you've arranged or that
you were associated with and Dwight was on, do you
know how many of them included Matt Bowyer?
       MR. SEMENZA:  Same objection.
BY MR. HEJMANOWSKI:
   Q.   You're declining to answer?
   A.   (Nodding head.)
   Q.   Do you know how many of those trips
included Wayne Nix?
       MR. SEMENZA:  Same objection.
BY MR. HEJMANOWSKI:
   Q.   And you're declining to answer?
   A.   (Nodding head.)

27

   Q.   "Yes"?
   A.   Yes.
   Q.   Do you know how many of those trips
included Damien LeForbes?
       MR. SEMENZA:  Same objection.
BY MR. HEJMANOWSKI:
   Q.   Do you decline to answer?
   A.   Yes.
   Q.   How many of those trips included Keith
Carter?
       MR. SEMENZA:  Same objection.
BY MR. HEJMANOWSKI:
   Q.   You're declining to answer?
   A.   Yes.
   Q.   How many of those trips included Owen
Hanson?
       MR. SEMENZA:  Same objection.
BY MR. HEJMANOWSKI:
   Q.   You're declining to answer?
   A.   Yes.
   Q.   And how many of those trips included
Mr. Capparelli?
       MR. SEMENZA:  Same objection.
BY MR. HEJMANOWSKI:
   Q.   You're declining to answer?

28

   A.   Yes.
       MR. SEMENZA:  Who was -- Paul, who was
the individual by the name of Bruce that you started
with.
       MR. HEJMANOWSKI:  Morlan, M-O-R-L-A-N.
       MR. SEMENZA:  Thank you.
BY MR. HEJMANOWSKI:
   Q.   Do you know the bartender Jerilyn Koch,
K-O-C-H?
   A.   No.
   Q.   Have you ever talked to her?
   A.   No.
   Q.   On December 10th, 2021, which I'll just
refer to as the day of the incident, were you kept
apprised during the afternoon of Dwight's gambling?
   A.   I don't remember.
   Q.   Did you have the capacity from your
office to watch the video of him as he was playing?
   A.   No.
   Q.   As he was playing, do you recall
conversations with Vanessa Reboton about his play?
   A.   Some, yes.
   Q.   What do you recall?
   A.   When Dwight had asked for increases in
his credit line?

29

   Q.   Yes, sir.
   A.   She also texted me that Dwight -- she was
going to help Dwight go to his room.  And those are
really the only two texts, I believe, or
conversations I've had with her during that time.
   Q.   The communications that you've described
before would take place, among other things, by text
messages.  Did you maintain copies of all your text
messages from December 10th, 2021?
   A.   No, I did not.
   Q.   Did anyone from the MGM or counsel come
to you and ask you to preserve your text messages
from that date?
       MR. SEMENZA:  I'll object to the extent
that it might call for attorney-client privileged
communications.
       Otherwise, you can answer the question.
       THE WITNESS:  I don't remember.  But no.
I don't remember, but most likely not.
BY MR. HEJMANOWSKI:
   Q.   Okay.  So if there were text messages on
your phone from that day, is your testimony those
text messages no longer exist?
   A.   They do not.
   Q.   Did anyone advise you with respect to

 

Justin Manacher

Dwight Manley v. MGM Resorts International, et al.

90

REPORTER'S CERTIFICATE

STATE OF NEVADA        )
                       ) ss
COUNTY OF CLARK        )

        I, Libby Stewart, a duly certified court reporter licensed in and for the State of Nevada, do hereby certify:

        That I reported the taking of the deposition of the witness, JUSTIN MANACHER, at the time and place aforesaid;

        That prior to being examined, the witness was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

        That I thereafter transcribed my shorthand notes into typewriting and that the typewritten transcript of said deposition is a complete, true and accurate record of testimony provided by the witness at said time to the best of my ability.

        I further certify (1) that I am not a relative, employee or independent contractor of counsel of any of the parties; nor a relative, employee or independent contractor of the parties involved in said action; nor a person financially interested in the action; nor do I have any other relationship with any of the parties or with counsel of any of the parties involved in the action that may reasonably cause my impartiality to be questioned; and (2) that transcript review pursuant to FRCP 30(e) was not requested.

        IN WITNESS WHEREOF, I have hereunto set my hand in the County of Clark, State of Nevada, this 5th day of May 2024.

_____
Libby Stewart, CCR 1000, RPR

