Paul R. Hejmanowski, Esq. (SBN #94)
Charles H. McCrea, Esq. (SBN #104)
PRHLAWLLC
520 South Fourth Street, Suite 360
Las Vegas, NV 89101
T 702.834.6166
paul@prhlawllc.com
charles@prhlawllc.com

Christopher W. Madel, Esq. (*pro hac vice*)
Jennifer M. Robbins, Esq. (*pro hac vice*)
MADEL PA
434 Lake Street
Excelsior, MN 55331
Telephone: (612) 605-0630
cmadel@madellaw.com
jmrobbins@madellaw.com
*Attorneys for DWIGHT MANLEY*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DWIGHT MANLEY,<br><br>Plaintiff,<br><br>vs.<br><br>MGM RESORTS INTERNATIONAL;<br>MGM GRAND HOTEL, LLC,<br><br>Defendants.<br><br>AND ALL RELATED ACTIONS. | Case No. 2:22-cv-01906-MMD-EJY<br><br>**REDACTED**<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE DWIGHT MANLEY'S PUNITIVE DAMAGES REQUEST AND/OR TO PRECLUDE PLAINTIFF FROM SEEKING PUNITIVE DAMAGES AT THE TIME OF TRIAL** |

## INTRODUCTION

Defendants present their motion as either a Rule 12 motion to strike, or as a thinly veiled summary judgment motion. Their motion is multiply flawed. *First*, if analyzed as a motion to strike (i.e., as Defendants request), Defendants' motion is late by two years because Defendants failed to join their arguments to strike the punitive-damages request with their Rule 12 motion to

1

dismiss the Third Amended Complaint. Defendants then answered the Third Amended Complaint, again without attempting to file what would still have been an untimely motion to strike. Either one of these pleading-stage failures dooms Defendants' motion.

*Second*, if treated as a non-Rule 12 dispositive motion, Defendants' motion is late by over 13 months, as the dispositive motion deadline was May 14, 2025. Defendants cannot file what amounts to a summary-judgment motion at this late date.

Additionally, Defendants' motion fails on the merits because Manley has alleged sufficient grounds for his prayer for punitive damages, has demonstrated additional facts supporting the requested relief through discovery, and any alleged absence of evidence tying the allegations to a director, officer, or managing agent is due to Defendants' spoliation of evidence.

Plaintiff respectfully requests the Court deny Defendants' motion.

## BACKGROUND[1]

### I.      Defendants' Rule 12 motion to dismiss and answer to Third Amended Complaint.

Manley filed his Third Amended Complaint on March 21, 2024. (ECF No. 64.)

Defendants moved to dismiss portions of the Third Amended Complaint (specifically the negligence per se and tortious breach of the implied covenant of good faith and fair dealing) on April 4, 2024. (ECF No. 68.) Defendants' motion to dismiss never once mentions Manley's request for punitive damages, whether with respect to the tortious breach claim or with respect to Manley's prayer for relief. (*See generally id.*; *compare* ECF No. 68 *to* ECF No. 64 at ¶ 112, p. 20 ¶ 4.) Moreover, after the Court's Order on the motion to dismiss, dated October 2, 2024 (ECF No. 114), Defendants answered the Third Amended Complaint on October 23, 2024, and did not object to, nor attempt to move to strike, Manley's request for punitive damages in his prayer for relief. (*See generally* ECF No. 120.)

---

[1]      Because the Court is familiar with the facts in this matter, due in no small part to Defendants' prior motions to dismiss and Defendants' motion for summary judgment, Plaintiff focuses the background section on a concise statement of the relevant procedural timeline. Application of Plaintiff's allegations and facts may be found in Plaintiff's Argument Section II.B.

## II.    May 14, 2025 deadline for dispositive motions.

On April 10, 2025, counsel for the parties filed their Stipulation and (Proposed) Order to Extend Case Management Deadlines (the "Eighth Request"). (ECF No. 158.) The Court entered an Order granting the Eighth Request that same day, which included the dispositive-motion deadline of May 14, 2025. (ECF No. 159, at 2.) This was the final scheduling order addressing the dispositive-motion deadline in this case.

Consistent with the court-ordered deadline, on May 14, 2025, Defendants filed a motion for summary judgment. (ECF No. 160.) That motion for summary judgment did not present any argument about Plaintiff's punitive-damages request; nor did Defendants' motion for summary judgment even include the word "punitive." (*See generally id.*)

**ARGUMENT**

Defendants frame their motion to strike, first, as an alleged problem with respect to pleading and, second, with respect to a purported lack of evidence. No matter how Defendants characterize their motion, it fails.

## I.    DEFENDANTS WAIVED THEIR RIGHT TO MOVE TO STRIKE OR FILE A DISPOSITIVE MOTION RELATED TO THE PUNITIVE-DAMAGES REQUEST.

### A.    Defendants waived their right to move to strike Manley's request for punitive damages.

Motions to strike are covered by Federal Rule of Civil Procedure 12(f). Rule 12(f) authorizes motions to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a "pleading." A complaint is a pleading. Fed. R. Civ. P. 7(a)(1).[2]

Rule 12(f) provides that a motion to strike may be made "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2). Thus, if a party already made a Rule 12 motion and omitted a Rule 12(f) motion that was available at the time, it cannot bring a separate 12(f) motion later—that is a

---

[2]    Motions are not "pleadings," and therefore not subject to Fed. R. Civ. P. 12(f). *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) ("Under the express language of [Rule 12(f)], only pleadings are subject to motions to strike.").

3

waiver. Fed. R. Civ. P. 12(g)(2). Moreover, if a party answers the complaint without first moving under 12(f), the motion is also waived. Fed. R. Civ. P. 12(f)(2).

Here, in his Third Amended Complaint filed March 21, 2024, Manley sought punitive damages. (ECF No. 64 at ¶ 112, p. 20 ¶ 4.) Defendants filed a motion to dismiss the Third Amended Complaint. (ECF No. 68.) In that Rule 12 motion, Defendants did not move to strike Manley's request for punitive damages. (*See id.*)  Defendants then answered that Third Amended Complaint on October 23, 2024. (ECF No. 120.)

Therefore, until the instant motion (filed in June 2026), Defendants never filed a motion to strike Manley's prayer for punitive damages. Accordingly, Defendants waived their right to file this motion for two independent reasons: (1) Defendants filed their Rule 12 motion with respect to the Third Amended Complaint without including a motion to strike (*see* Fed. R. Civ. P. 12(g)(2)); and (2) Defendants "respond[ed] to the pleading" by answering the complaint without first filing a motion to strike (*see* Fed. R. Civ. P. 12(f)(2)).[3] Accordingly, this Court should deny Defendants' tardy attempt to strike Manley's request for punitive damages.

**B.     To the extent Defendants now attempt to argue that the instant motion is a non-Rule 12 dispositive motion, MGM waived that argument, too.**

To the extent Defendants' motion is treated as a different type of dispositive motion, then it is an untimely motion for summary judgment.

The deadline for dispositive motions in this matter was May 14, 2025. (ECF No. 159, at 2.) Defendants filed their summary-judgment motion on that deadline. (ECF No. 160.) Defendants' summary-judgment motion did not include any argument related to Plaintiff's request for punitive

---

[3]     *See, e.g., L & L Gold Assocs. v. Am. Cash for Gold, LLC,* No. 09-10801, 2009 U.S. Dist. LEXIS 48767, at *5 (E.D. Mich. June 10, 2009) ("Defendants filed an initial answer (Docket # 9) to Plaintiff's amended complaint on April 17, 2009 and attached a motion to strike as an exhibit to their answer. Apparently realizing that it is improper to file a motion as an exhibit to a pleading, Defendants re-filed their answer on April 21, 2009 (Docket # 11) and re-filed their motion to strike as a stand-alone motion and brief (Docket # 12, 13). However, Rule 12(f) does not permit a party to file a motion to strike simultaneously with a responsive pleading; rather, a Rule 12(f) motion must be filed before a party responds to a pleading. As such, Defendants' motion to strike is untimely.") (emphasis in original).

damages. (*See generally id.*)

Defendants' instant motion—filed on June 29, 2026—is late by *13 months and 15 days*. (ECF No. 245.) Defendants' failure to meet the dispositive-motion deadline is another independent basis on which their motion should be denied.

**II.      IN ADDITION TO BEING UNTIMELY, DEFENDANTS' MOTION ALSO FAILS ON THE MERITS.**

Defendants' motion fails not only because it is untimely (*supra*) but also because Manley has pled, and discovered, facts to support his prayer for punitive damages. Indeed, Defendants' argument that there is some insufficient factual basis to support employer liability invites the Court to reward spoliation by treating any purported absence of evidence of Defendants' own making as proof in Defendants' favor. Manley respectfully requests that the Court decline Defendants' invitation here, where the record supports allowing the jury to decide the question of punitive damages.

**A.      Manley's request for punitive damages in his prayer for relief is the appropriate place for such a request.**

Defendants argue that because Manley included an allegation with respect to punitive damages in a now-dismissed claim, Manley should be precluded from arguing for punitive damages entirely. (*See, e.g.,* ECF No. 245 at 3–5.) This ignores: (1) that Manley requested punitive damages in his prayer for relief, as is proper (*see* ECF No. 64 at p. 20, ¶ 4); and (2) as described further *infra*, Manley's punitive-damages request is supported by more than sufficient allegations and facts in the record.

As Defendants acknowledge, punitive damages "are a remedy, not a cause of action." (ECF No. 245 at 5 (citation omitted).) Therefore, there need not be a specific count in the complaint alleging a claim for punitive damages—indeed, a punitive-damages count would be improper and subject to dismissal *without precluding* Manley from seeking punitive damages in the case. *See, e.g., Garcia v. Nev. Prop. 1, LLC*, No. 2:14-CV-1707 JCM (GWF), 2015 U.S. Dist. LEXIS 1606, at *8–9 (D. Nev. Jan. 6, 2015) ("Punitive damages, like plaintiff's vicarious liability and respondeat superior claims, are not a legitimate basis for an independent cause of action.

Punitive damages are one remedy that the court may impose upon a finding of liability.”).

Indeed, in a Report and Recommendation to this Court, the same Magistrate Judge as in this matter recommended denying a motion to amend a complaint to add a separate cause of action for punitive damages while also recommending that the plaintiff be allowed to “seek to amend to add punitive damages to his prayer for relief”—i.e., *exactly* what Manley included in his prayer for relief here. *See, e.g., Benik v. Lvgv, LLC*, No. 2:21-cv-00623-APG-EJY, 2021 U.S. Dist. LEXIS 257692, at *3 (D. Nev. Aug. 6, 2021) (denying motion to amend complaint because the “proposed amendment seeks only to add a separate cause of action for punitive damages” but expressly “recommend[ing] that Plaintiff’s Motion to Amend . . . be Denied without prejudice so that Plaintiff may, if he so chooses, seek to amend to add punitive damages to his prayer for relief.”[4]).

Defendants’ arguments that Manley should be precluded from arguing for punitive damages merely because Manley’s Third Amended Complaint (“TAC”) included *two* locations where he requested punitive damages are contrary to logic and law and should be rejected.

**B.  Manley has pled, and uncovered, more than enough to support his request for punitive damages.**

Defendants argue that a plaintiff must “plead facts to support an award of punitive damages to maintain a prayer for them in his complaint and to pursue them at trial.” (ECF No. 245 at 5 (quoting *Baker v. Transdev United States*, 2:24-CV-02411-GMN-EJY, 2026 U.S. Dist. LEXIS 26993, at *6 (D. Nev. Feb. 6, 2026)). That is exactly what Manley did.

As this Court well knows, where, as here, there is more than “mere negligence” such as “unusual and serious circumstances of oppression, hardship, and injury” or other evidence meeting the requirements and definitions under “Nevada Revised Statutes” (‘NRS’) 42.001 *et seq*.,

---

[4] The plaintiff in *Benik* filed an Objection arguing that the Report and Recommendation was incorrect because the plaintiff’s proposed amendment only added the request for punitive damages to his prayer for relief and not as a standalone cause of action, but the matter was dismissed with prejudice before this Court issued a ruling with regard to the proposed amended complaint. *Benik v. Lvgv, LLC*, No. 2:21-cv-00623-APG-EJY at ECF Nos. 32–34. Of course, the Report and Recommendation and the plaintiff’s Objection in *Benik* both support Manley’s point here: Manley’s request for punitive damages in the prayer for relief is proper and sufficient when coupled with the factual allegations supporting the punitive-damages request described further *infra*.

punitive damages may be awarded. *See, e.g., Thomas v. Russel*, No. 3:24-CV-00357-MMD-CLB, 2026 U.S. Dist. LEXIS 34650, at *15–16 (D. Nev. Feb. 20, 2026) (citing, e.g., *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 255 (Nev. 2008); *Madrigal v. Treasure Island Corp.*, No. 2:08-CV-01243-PMP-GWF, 2008 U.S. Dist. LEXIS 130783 (D. Nev. Dec. 30, 2008)).

In *Thomas*, this Court allowed the plaintiffs to amend the complaint in their negligence action to request punitive damages because allegations "raise[d] Defendant's conduct to the level of malice required for punitive damages in negligence claims." 2026 U.S. Dist. LEXIS 34650, at *15 (citations omitted) (noting that the plaintiffs alleged sufficient facts for a juror to reasonably conclude the defendants committed "despicable conduct that subjects a person to cruel and unjust hardship" under NRS 42.001(4) such as the directions given to the driver of a truck pulling two trailers to perform a U-turn rather than drive to another exit and that the driver saw the car with which he would collide during the U-turn in the rearview mirror before attempting the U-turn).

Here, Defendants do not argue that Manley has failed to meet the requirements of NRS 42.005 subsection 1, i.e., that the conduct demonstrates guilt "of oppression, fraud, or malice, express or implied." (*See generally* ECF No. 245.) Rather, Defendants focus their untimely motion on the purported failure to meet the requirements of NRS 42.007(1) (*see* ECF No. 245 at 5–7) which provides:

> 1. Except as otherwise provided in subsection 2, in an action for the breach of an obligation in which exemplary or punitive damages are sought pursuant to subsection 1 of NRS 42.005 from an employer for the wrongful act of his or her employee, the employer is not liable for the exemplary or punitive damages unless:
>
> (a) The employer had advance knowledge that the employee was unfit for the purposes of the employment and employed the employee with a conscious disregard of the rights or safety of others;
>
> (b) The employer expressly authorized or ratified the wrongful act of the employee for which the damages are awarded; or
>
> (c) The employer is personally guilty of oppression, fraud or malice, express or implied.
>
> If the employer is a corporation, the employer is not liable for exemplary or punitive damages unless the elements of paragraph (a), (b) or (c) are met by an officer, director or managing agent of the corporation who was expressly

authorized to direct or ratify the employee's conduct on behalf of the corporation.

NRS 42.007(1). Defendants' argument with respect to NRS 42.007 mischaracterizes both the law and Manley's allegations.

*First*, Defendants' argument misstates the requirements of NRS 42.007(1) by implying that Manley must meet "all" of the portions of NRS 42.007(1). (ECF No. 245 at 5 ("But to be entitled to punitive damages against Defendants based on Ms. Koch's alleged conduct, Plaintiff would need to satisfy the requirements of NRS 42.007, which circumscribes the availability of punitive damages against a corporation based on the acts of an employee. Plaintiff cannot meet any of the statute's requirements, *much less **all** of them*.") (emphasis added).) To the extent Defendants argue that (a), (b), and (c) (i.e., "all") portions of NRS 42.007(1) are required, Defendants are incorrect as is clear from the express language of the statute which uses the disjunctive "or" in two relevant places as emphasized below:

> 1. …
>
>   (a)…;
>
>   (b) The employer expressly authorized or ratified the wrongful act of the employee for which the damages are awarded; ***or***
>
>   (c)….
>
> …
>
>   If the employer is a corporation, the employer is not liable for exemplary or punitive damages unless the elements of paragraph (a), (b) ***or*** (c) are met ….

*See* NRS 42.007(1)(b) (emphasis added); NRS 42.007 (hanging paragraph) (emphasis added).

*Second*, Defendants also misrepresent Manley's allegations and improperly limit them to the idea that Manley "was drugged by the bartender, Jerilyn Koch." (ECF 245 at 5–6.) In doing so, Defendants ignore the other allegations and facts demonstrating the appropriateness of Manley's prayer for punitive damages (ECF No. 64 at 20, ¶ 4), including but not limited to the following which tie both Defendants (MGM Grand Hotel and MGM Resorts International) to employee misconduct:

8

- Manley was drugged with ketamine leading to incapacity (e.g., ECF No. 64 at ¶¶ 31–34);

- Manley was disoriented, "out of it," shattered an ashtray and cut his hand but did not feel any pain and was not aware that he was bleeding (*id.* at ¶ 35) and ultimately needed assistance walking back to his villa though he fell multiple times and sustained severe bruises (*id.* at ¶¶ 50–51);

- Rather than seek medical attention for Manley, Defendants provided band-aids for Manley's friend apply to his hand and moved Manley to a different blackjack table so that he could continue gaming (*id.* at ¶¶ 36, 77), and increased his credit limit (¶¶ 37–41, 77);

- Defendants' host assigned to Manley, Vanessa Reboton, told Manley's friend, Chris Snyder, that Manley was behaving erratically yet Defendants allowed Manley to continue to gamble and increased Manley's credit limit through two additional "This Trip Only" ("TTO") requests (ECF No. 64 at ¶¶ 37–41; Snyder Dep. Tr. (Ex. 1) at 45:15–46:17 (testifying that before Snyder accompanied Manley "to the bathroom to put a band-aid on his bleeding hand" Reboton stated to Snyder that "they . . . feel like [Manley is] being erratic"); *see also* Reboton Dep. Tr. (Ex. 2) at 59:7–15 (testifying that she texted Manacher that Manley looked "drunk," "wasted," or words to that effect));

- Despite Reboton's statements, observations, and Defendants' policies, she signed as a witness to Manley's TTO requests (ECF No. 64 at ¶ 42);

- Manley does not recall playing at the second blackjack table, requesting TTO increases, or signing TTO increase documents (*id.* at ¶ 49);

- On December 11, 2021, Manley notified Defendants of his condition and that he believed he was drugged the day before (*id.* at ¶ 60), and requested that Defendants review surveillance tapes (Reboton Dep. Tr. (Ex. 2) at 106:18–107:1);

- Reboton obtained approval for the credit increases from Justin Manacher, MGM Resorts International's President of Casino Marketing. (Manacher Dep. Tr. (Ex. 3)

10:4–15; *id.* at 14:18–21; Ex. 14);

- As of December 2021, Reboton's email address had an ▬▬▬▬▬ domain and the signature of her emails identified her as the Regional Marketing Executive with MGM Resorts International (Ex. 4);

- As of December 2021, Justin Manacher's email address had an ▬▬▬▬▬ domain (Ex. 5);

- Defendants failed to preserve Reboton and Manacher's text messages to each other regarding Manley from December 10, 2021, resulting in a spoliation order against Defendants (Reboton Dep. Tr. (Ex. 2) at 24:19–25:2; Manacher Dep. Tr. (Ex. 3) at 29:6–30:6; ECF No. 171, at 3–9);

- Defendants failed to preserve or produce the first 48 minutes of surveillance video of Koch's shift at the Mansion high-limit salon (*see, e.g.,* Koch Dep. Tr. (Ex. 6) 40:2–7) as well as video from the bar from before Koch's shift began;

- Rather than obtain medical attention or take other action to protect Manley while he was incapacitated and reportedly behaving erratically, Reboton requested, and Manacher agreed, to issue additional credit to Manley, which was in violation of Defendants' TTO policy (*compare* Manacher Dep. Tr. (Ex. 3) at 59:4–13, 60:16–25 *to* Ex. 7 at MGM00125; *see also* Reboton Dep. Tr. (Ex. 2) at 67:23–68:2 ("Well, there's a guideline that is typically one TTO per trip, but, again, that's a guideline and varies by patron."));

- The TTO policy that Manacher and Reboton violated includes a footer indicating that it is ▬▬▬▬▬ (Ex. 7);

- Defendants also violated their own Responsible Gaming Practices policy by allowing Manley to continue gaming despite his impairment (*see e.g.* Exs. 8, 9, 10 (each is an "MGM Grand" "Marker Limit Increase Request for Nevada Properties" signed by Reboton and stating, "MGM RESORTS INTERNATIONAL AND EACH OF ITS SUBSIDIARIES ENDORSES RESPONSIBLE GAMING" (capitalization in original); *id.* at Ex. 11 at MGM00123 (Responsible Gaming

Practices policy published with a header stating ██████████████████

- The bartender, Jerilyn Koch, an employee of MGM Grand (Koch Dep. Tr. (Ex. 6) at 12:18–13:10), testified about several drinks that she did not make according to the specifications of Bartenders Union Local 165 (*id.* at 29:2–17, 70:1–71:15), including the Old Fashioned served to Manley, and that she regularly violated policies with respect to having personal belongings behind the bar and not in a cabinet as required by Defendants' policies (*id.* at 48:2–9; *id.* at 57:8–25).

- Despite allegations that ████████████████████████████ ████████████████████ (Ex. 12) and purported annual trainings by Defendants on drugs, including ketamine, Koch testified that she had only heard one rumor of a guest being drugged (and not by an MGM employee) (Koch Dep. Tr. (Ex. 6) at 22:6–23:4)—i.e., Defendants were on notice of the likely injury to Manley and others but chose to do nothing to protect them;

- Koch also testified that she was never interviewed by anyone associated with Defendants about the drink she made for Manley on December 10, 2021 (*id.* at 19:12–15).

- The head of security for all MGM Resorts Las Vegas properties, Mark Cassell, testified as a corporate representative for Defendants that if "security was notified and was responding" to an allegation of a drugging with a bartender involved that security would be expected to talk with the bartender and the victim. (Cassell Dep. Tr. (Ex. 13) at 18:21–19:6; *see also id.* at 19:17–24 (Cassell testifying that "[i]f the victim was coherent and able to communicate, then absolutely, and was present and willing to talk to the officer, then it would be negligent" not to talk to the victim of a reported drugging); *id.* at 37:2–4 (admitting that the bartender was not interviewed).

The above facts and allegations are more than sufficient to allow Manley's punitive-damages request to proceed to the jury because the record demonstrates that the applicable requirements of "authorization, ratification, or oppression, fraud, or malice express or implied"

11

have been met by an "officer, director, or managing agent of the corporation who was expressly authorized to direct or ratify the employee's conduct." NRS 42.007; *see also Countrywide*, 192 P.3d at 258. "Although NRS 42.007 fails to define a managing agent, we previously have recognized that determining an individual's managerial capacity depends on 'what the individual is authorized to do by the principal and whether the agent has the discretion as to what is done and how it is done.'" *Countrywide*, 192 P.3d at 258.

Additionally, as in *Countrywide*, to the extent there is an absence of evidence linking a director, officer, or managing agent to the conduct, Defendants have caused that absence of evidence by their spoliation and should not benefit from it. There, the Nevada Supreme Court "conclude[d] that the [punitive damages] award was supported by substantial evidence" and "affirm[ed] the district court's judgment in that respect." 192 P.3d at 246. There, lender-defendant Countrywide misidentified and foreclosed on a condominium while the owners were temporarily living in another state and, in preparing the condominium for resale, disposed of the owners' belongings. *Id.* The Nevada Supreme Court rejected the defendant's argument that punitive damages were improperly submitted to the jury and noted that the plaintiffs "presented evidence of multiple ignored warning signs," "evidence indicating that Countrywide continued to proceed . . . despite knowing of the probable harmful consequences of doing so," and two notifications that there was "a potential mix-up" after which the defendant's asset manager, Baldwin, contacted the foreclosure department and was told she could proceed. *Id.* at 255. Notably, Defendant Countrywide "could not produce Baldwin's e-mail, nor could it produce the unidentified person from its foreclosure department who gave her this assurance." *Id.*[5] Thus, the Court concluded that "[b]ased on the above, there was sufficient evidence to infer that Countrywide knew that it may have been proceeding against the wrong unit" (*id.* at 256) and rejected Countrywide's characterizations that there was merely "a convergence of undetected mistakes" and therefore

---

[5] "Because of Countrywide's failure to produce perhaps the best evidence to exonerate it of punitive damage liability in this case, the district court permitted the jury to infer that the lost e-mail and the unidentified person's testimony would have been unfavorable to Countrywide had this evidence been produced." *Id.* at 256 n.54 (citing *Bass-Davis v. Davis*, 122 Nev. 442, 134 P.3d 103, 109–10 (2006)).

insufficient evidence of "actual knowledge, equivalent to the intent to cause harm." *Id.* at 256 n.55. As the Court explained, NRS 42.001(1)'s definition of "conscious disregard" "does not impose" a "specific evidentiary requirement" of "direct proof of a defendant's actual knowledge." *Id.*

Here, Reboton was employed by Destron, which she testified was a part of MGM and that she did not know its "exact affiliation." (Reboton Dep. Tr. (Ex. 2) at 10:4–12.) In December 2021, Reboton was a host at not only MGM Grand but also all of the company's Las Vegas properties and some regional properties. (*Id.* at 15:2–7.) Despite her testimony about being employed by Destron, Reboton's own emails from December 2021 demonstrate that she held herself out as an executive of MGM Resorts International and the representation was allowed by MGM Resorts International. (Ex. 4.) As of December 10, 2021, Reboton's title was either Marketing Executive or Regional Marketing Executive (*id.* at 25:25–26:2) and she typically filled out corporate line of credit documents that she was witnessing with the title "Marketing Executive." (*Id.* at 75:4–14.) All of the hosts, including Reboton, reported either directly or indirectly to Manacher. (*Id.* at 30:1–6.) During Manley's visits to Las Vegas, Reboton "typically" obtained approval for Manley's TTOs from Manacher. (*Id.* at 69:6–16, 78:21–79:1.) On December 10, 2021, Reboton was with Manley for the entire afternoon of his gaming. (Reboton Dep. Tr. (Ex. 2) at 45:7–9.) Manacher admitted to having conversations with Reboton about Manley on December 10, 2021 and received at least one text from Reboton about purportedly helping Manley to his room (Manacher Dep. Tr. (Ex. 3) at 28:20–29:5) after which Manacher "called her immediately" and asked Reboton to "[l]et [him] know if everything works out and [to] give [him] a call back if [she] need[ed] [him]" (*id.* at 33:15–34:4).

Manacher testified that he was employed by MGM Resorts International (though he also conveyed the possibility that he was employed by Destron) as Vice President, Executive Vice President, and then President of Casino Marketing. (Manacher Dep. Tr. (Ex. 3) 10:4–7; *id.* at 14:18–21 ("I'm paid by MGM Resorts. I don't believe I'm in Destron. I believe I'm paid by MGM Resorts.").) Manacher was in charge of hosts within the Destron subsidiary organization of MGM Resorts International that Manacher testified are some of the largest producing hosts in the

13

company. (*Id.* at 10:8–11:6.) Manacher further testified that he had "responsibility for credit functions" and that he had "up to $5 million in credit authorization." (*Id.* at 11:7–12.) Nineteen employees reported directly to Manacher and approximately 30 reported indirectly to him. (*Id.* at 11:24–12:7.) Manacher also confirmed that he approved Manley's credit-increase requested by Reboton in his role. (*See, e.g., id.* at 43:12–18, 48:2–9, 60:16–25.)

There can be no credible dispute that Manacher is a managing agent of MGM Resorts International with authority to authorize millions in credit regardless of whether the authorizations ran contrary to policy or, as Reboton characterized it, "guidelines." (Reboton Dep. Tr. (Ex. 2) at 67:23–68:2.) Manacher either ratified Reboton's repeated preparation of credit limit increases for Manley despite awareness of Manley's incapacitation and need for medical attention, or Manacher himself acted with the requisite malice, oppression, or fraud by "supporting a pattern of ignoring" "red flags" or a "patent failure to see the obvious." *Countrywide*, 192 P.3d at 748.

Likewise, there is sufficient evidence that Reboton acted with the requisite malice, oppression, or fraud by failing to see the obvious with respect to Manley's incapacitation after spending the afternoon of December 10 with Manley and learning that the blackjack table's felt had to be changed because Manley had shattered an ashtray, injured his hand, and bled onto the table, which he did not even realize he had done. (Reboton Dep. Tr. (Ex. 2) at 46:8–21.) Reboton reportedly stated that Manley was behaving erratically (Snyder Dep. Tr. (Ex. 1) at 45:15–46:17), yet she obtained his signature in the midst of his incapacitation on credit documents. She also admitted that she never even considered sending Manley to a doctor or clinic. (Reboton Dep. Tr. (Ex. 2) at 46:8–21.) Later, Reboton saw Manley leaning against a wall for support (*Id.* at 52:3–16) but she was still going to put Manley in a car to another casino (*id.*) and, again, did not call for medical assistance. For these reasons alone, NRS 42.007(1)(b) & (c), are satisfied.

At the same time, even setting aside the allegations of poisoning with ketamine, Koch's conduct (and that of the other MGM Grand employees who continued to serve Manley alcohol and allow him to continue gaming notwithstanding his obvious intoxication or incapacity) has been ratified and condoned by Defendants at every turn as demonstrated through Defendants' failure to preserve critical evidence (including the text messages of the bartender, the text messages between

Reboton and Manacher, and the surveillance video of the bar setup and use before 48 minutes into Koch's shift), Defendants' failure to conduct even the most basic of interviews and investigations into the allegations of drugging (including never interviewing Koch at all), the lack of any action taken following other complaints of Defendants' drugging patrons, the move from one blackjack to another after Manley injured himself and bled on the first table—without even having the ability to understand that he was injured—and the continued increases in Manley's credit limit rather than providing any medical care. Indeed, Reboton was present the whole time that Manley was playing that afternoon, learned of Manley's injury to his hand, and conveyed Manley's "erratic" behavior and that he was "drunk" or "wasted" not only to Snyder but also Manacher. As in *Countrywide*, there are numerous possible paths a jury could take to determine that NRS 42.007 has been satisfied. 192 P.3d at 258; *see also, e.g., Prestianni v. Bzclarity/Phantom Sub, LLC*, 2009 U.S. Dist. LEXIS 149557, *15–16 (D. Nev. Nov. 24, 2009) (denying summary judgment and noting in punitive-damages context that Defendants' alleged failure to take any action after a first attack on plaintiff "certainly supports the claim of foreseeability as to" two later attacks "especially . . . when considering the allegation and evidence presented regarding" the "work atmosphere" and allegations that supervisors witnessed the attacks).

## CONCLUSION

Defendants have waived their right to bring a motion to strike or a dispositive motion by failing to join their motion to strike with their Rule 12 motion to dismiss the Third Amended Complaint that they filed over two years ago in April 2024 and by failing to raise any non-Rule 12 arguments by the dispositive motion deadline over 13 months ago. Defendants' years-late request should be denied on those grounds alone.

Additionally, Defendants' motion fails because there is more than sufficient evidence in Manley's Third Amended Complaint and in the record developed in discovery to support Manley's prayer for punitive damages to go to the jury. And to the extent there is any doubt about Defendants' actions under NRS 41.007, that purported absence of additional evidence is due to Defendants' spoliation of evidence.

Plaintiff respectfully requests the Court deny Defendants' motion.

DATED: July 13, 2026

Respectfully submitted,

/s/ Jennifer M. Robbins
PRH LAW LLC
Paul R. Hejmanowski, Esq., Bar No. 94
Charles H. McCrea, Esq., Bar No. 104
520 S. Fourth St., Ste. 360
Las Vegas, Nevada 89101
-
MADEL PA
Christopher W. Madel, Esq. (*pro hac vice*)
Jennifer M. Robbins, Esq. (*pro hac vice*)
434 Lake Street
Excelsior, MN 55331

*Attorneys for Plaintiff/Counter-Defendant*
*Dwight Manley*

**INDEX TO EXHIBITS**
**ACCOMPANYING DECLARATION OF JENNIFER M. ROBBINS**

| Exhibit # | Description | No. of Pages | Appendix Nos. |
|---|---|---|---|
| 1 | Portions of the Deposition of Christopher R. Snyder taken on March 22, 2024 | 3 | App. 001 - App. 003 |
| 2 | Portions of the Deposition of Vanessa Reboton taken on March 27, 2024 | 19 | App. .004 - App. 022 |
| 3 | Portions of the Deposition of Justin Manacher taken on April 24, 2024 | 14 | App. 023 - App. 036 |
| 4 | Email from Vanessa Reboton to Lynda Bilbao, cc'd to Justin Manacher re 12/10-12/12 Dwight Manely #1485301 - MGM, dated December 6, 2021. This exhibit is Bates-labeled MGM00163 and Marked as Exhibit 4 at the deposition of Vanessa Reboton. FILED UNDER SEAL | 1 | App. 037 |
| 5 | Email chain between Lynda Bilbao and Vanessa Reboton re RE: Manley, Dwight ML# 1485301, dated December 10, 2021. This exhibit is Bates-labeled MGM00165 and marked as Exhibit 6 at the deposition of Vanessa Reboton. FILED UNDER SEAL | 1 | App. 038 |
| 6 | Portions of the Deposition of Jerilyn Koch taken on March 28, 2024 | 12 | App. 039 - App. 050 |
| 7 | TTO Policy updated on May 11, 2020. This exhibit is Bates-labeled MGM00125 - MGM00126 and marked as Exhibit 11 at the deposition of Vanessa Reboton. FILED UNDER SEAL | 2 | App. 051 - App. 052 |
| 8 | Marker Limit Increase Request for Nevada Properties for Dwight Manley dated December 10, 2021. This exhibit is Bates-labeled P000058 and marked as Exhibit 5 at the deposition of Vanessa Reboton | 1 | App. 053 |
| 9 | Marker Limit Increase Request for Nevada Properties for Dwight Manley dated December 10, 2021. This exhibit is Bates-labeled P000059 and marked as Exhibit 7 at the deposition of Vanessa Reboton | 1 | App. 054 |
| 10 | Marker Limit Increase Request for Nevada Properties for Dwight Manley dated December 10, 2021. This exhibit is Bates-labeled P000060 and marked as Exhibit 9 at the deposition of Vanessa Reboton | 1 | App. 055 |

| Exhibit # | Description | No. of Pages | Appendix Nos. |
|---|---|---|---|
| 11 | MGM Resorts International's Responsible Gaming Best Practices. This exhibit is Bates-labeled MGM00121 - MGM00124 and marked as exhibit 2 at the deposition of Jeffrey Cooper. FILED UNDER SEAL | 4 | App. 056 - App. 059 |
| 12 | Compilation of Incident Reports at MGM Properties. This exhibit is Bates-labeled MGM00274 - MGM00339. FILED UNDER SEAL | 66 | App. 060 - App. 125 |
| 13 | Portions of the Deposition of Marc Cassell, 30(b)(6) Designee of MGM Grand Hotel, LLC and MGM Resorts International, taken on March 5, 2025 | 4 | App. 126 - App. 129 |
| 14 | MGM Resorts International's Marker Limit Change in Customer Information/Reactivation for Dwight Manley dated April 16, 2021. This exhibit is Bates-labeled MGM00143. FILED UNDER SEAL | 1 | App. 130 |

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that on this 13th day of July, 2026, I caused the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE DWIGHT MANLEY'S PUNITIVE DAMAGES REQUEST AND/OR TO PRECLUDE PLAINTIFF FROM SEEKING PUNITIVE DAMAGES AT THE TIME OF TRIAL** to be served by the Court's CM/ECF System to all parties and counsel of record.

*/s/Jennifer M. Robbins*

19