Lawrence J. Semenza, III, Esq. (Bar No. 7174)
E-mail: ljs@semenzarickard.com
Katie L. Cannata, Esq. (Bar No. 14848)
E-mail: klc@semenzarickard.com
SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone:  (702) 835-6803
Facsimile:   (702) 920-8669

Bethany Woodard Kristovich, Esq. (*pro hac vice*)
E-mail: bethany.kristovich@mto.com
John Schwab, Esq. (*pro hac vice*)
E-mail: john.schwab@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

*Attorneys for Defendant MGM Resorts International &
Defendant/Counterclaimant MGM Grand Hotel, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DWIGHT MANLEY,<br><br>               Plaintiff,<br><br>v.<br><br>MGM RESORTS INTERNATIONAL; MGM GRAND HOTEL, LLC,<br><br>               Defendants. | Case No. 2:22-cv-01906-MMD-EJY<br><br>**REPLY IN SUPPORT OF MOTION TO STRIKE PLAINTIFF DWIGHT MANLEY'S PUNITIVE DAMAGES REQUEST AND/OR TO PRECLUDE PLAINTIFF FROM SEEKING PUNITIVE DAMAGES AT THE TIME OF TRIAL** |
| MGM GRAND HOTEL, LLC, a Nevada limited liability company,<br><br>               Counterclaimant,<br><br>v.<br><br>DWIGHT MANLEY, an individual,<br><br>               Counter-Defendant. | |

## I.    <u>INTRODUCTION</u>

Plaintiff Dwight Manley's ("Plaintiff") Opposition has almost nothing to say on the merits of the two arguments made by Defendants MGM Grand Hotel, LLC and MGM Resorts International's (together, "Defendants").  In particular, the Opposition fails to point to *any* remaining claim that could support punitive damages as a matter of law.  Instead, Plaintiff spills much ink attacking strawmen, and attempting to muddy the waters around Defendants' straightforward Motion.  Plaintiff's arguments do not change the fact that he cannot seek punitive damages on his claims.

*First*, Plaintiff contends that Defendants' Motion is untimely.  Plaintiff is incorrect.  His contention that he may seek punitive damages at trial even if he has no legal basis to do so because Defendants' time to challenge punitives was either at the pleading stage or at summary judgment has no basis in the law.  Courts routinely consider such challenges even on the eve of trial, in the form of motions in limine.  Defendants' Motion seeks exactly what it says: to preclude Plaintiff from seeking punitive damages at trial because Plaintiff lacks a legal basis to do so.  In a case where no trial date has even been set, that request is not untimely.

*Second*, Plaintiff no longer has a claim that would, even if proven, support a claim for punitive damages.  Plaintiff responds by arguing that punitive damages are a remedy, not a claim, and the mere fact his tortious breach of the covenant of good faith and fair dealing claim was dismissed does not mean he cannot seek punitive damages as a remedy.  But Plaintiff needs *some* claim that would support punitive damages.  The Opposition does not argue that any of his four remaining claims support punitive damages and for good reason: as explained below, the claims for declaratory relief and negligence do not support a punitive award as a matter of law and the claims for breach of the implied covenant and unjust enrichment do not allow for punitive damages because they sound in contract, not tort.

*Third*, even if Plaintiff had a claim that could *theoretically* support punitive damages, he has not identified any actions that (1) would qualify as malice, oppression, or fraud and (2) were ratified by a managing agent, director, or officer.  His Opposition sets out a laundry list of

supposed wrongdoing, but makes no attempt to show how those allegations would amount to "despicable conduct" or how those alleged actions were ratified.

Plaintiff points to no law that supports his arguments. He is wrong that a defendant can only challenge a punitive damages claim at the pleading or summary judgment stage; wrong that he can seek punitive damages on any claim he advances; and wrong that alleged actions as minor as a bartender supposedly not following her union's rules regarding drink preparation could entitle Plaintiff to punitive damages.

Plaintiff should not be allowed to seek punitive damages at trial when he has no legal basis to do so. The Motion should be granted.

## II.     ARGUMENT

### A.     The Motion Is Timely

Plaintiff argues that the Motion must be construed as a motion to strike or a "dispositive motion" and dismissed as untimely. The argument is not well-taken.

Plaintiff's argument would mean that he (or any plaintiff) could seek punitive damages at trial even if he had no legal basis to do so, so long as the defendant did not move to strike the request for punitives at the pleading stage, or as part of a motion for summary judgment. Plaintiff cites no authority for that proposition. And, in fact, courts in this District routinely consider, on the merits, motions in limine that seek to preclude claims of punitive damages. *See, e.g.*, *Union Pac. R.R. Co. v. Winecup Ranch, LLC*, 2020 WL 7125918, at *24 (D. Nev. Dec. 4, 2020).

This case underscores why Plaintiff's position is untenable. Defendants' argument is that *today*, after this Court's dismissal of two claims and after this Court's partial grant of summary judgment on two other claims, Plaintiff no longer has any basis to seek punitive damages. Under Plaintiff's reading of the law, however, Defendants would effectively be penalized for prevailing on their dispositive motions: although Defendants succeeded in eliminating or prevailing on every claim that could support punitive damages, Plaintiff contends that Defendants forfeited the right to challenge punitive damages because they did not bring this Motion before they knew the outcome of their dispositive motions. That result finds no support in the law or common sense. And there is no possible prejudice to Plaintiff as no trial date has been set, and discovery is closed. Yet

Plaintiff asks this Court to allow it to seek punitive damages without a legal basis to do so.  The argument is unsupported, and must be rejected.

Finally, this Court has the authority to strike the request for punitive damages on its own, at any time.  Fed. R. Civ. P. 12(f)(1).  Even if Defendants were somehow barred from moving to preclude Plaintiff from seeking punitives, the Court could, and should, strike the request for the same reasons outlined in the Motion and below: Plaintiff cannot be allowed to seek punitive damages at trial without a legal basis.

**B.       Plaintiff's Claims Do Not Support an Award of Punitive Damages**

Plaintiff argues that the fact that his tortious breach of the duty of good faith and fair dealing claim was dismissed is irrelevant because punitive damages are a remedy and Plaintiff included a request for punitive damages in his prayer for relief.  Dkt. No. 248 at 5:17–20.  But in order to seek punitive damages, Plaintiff must assert a *claim* that, if proven, would support a punitive award.  Plaintiff does not point to any such claim in his Opposition, because he has no such claim remaining in the case.

After this Court dismissed Plaintiff's tortious interference claim, and granted summary judgment on Plaintiff's unfair trade practices claim, Plaintiff has no remaining claims that would support punitive damages.  *First,* Plaintiff cannot, as a matter of law, seek punitive damages for his claim for declaratory relief.  *See, e.g.*, *Freedom Mortg. Corp. v. Kent*, 2020 WL 5096995, at *10 (D. Nev. Aug. 28, 2020) ("[Plaintiff] has not presented authority that it can obtain punitive damages for a declaratory relief claim.  I therefore dismiss the request for punitive damages.").

*Second,* Plaintiff's negligence claim also cannot, as a matter of law, support an award of punitive damages.  *See, e.g.*, *McConnell v. Estes Express Lines, Inc.*, 2024 WL 3639918, at *1 (D. Nev. July 31, 2024) ("Generally, a plaintiff is not entitled to pursue punitive damages on negligence claims.").

*Third,* Plaintiff's remaining, non-tortious, claim for breach of the implied covenant cannot support a claim for punitive damages as a matter of law.  *See Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 2012 WL 665988, at *2–3 (D. Nev. Feb. 28, 2012) (distinguishing between contractual and tortious breach of the implied covenant of good faith and fair dealing and holding that punitive

damages are available only for the latter).  That is because a party generally may not seek punitive damages for a claim that "sounds in contract, and not tort." *Road & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 393 (Nev. 2012).

*Fourth,* while an unjust enrichment claim might support punitive damages, Plaintiff's unjust enrichment claim here plainly sounds in contract, and therefore cannot give rise to punitive damages.  Unjust enrichment is a quasi-contractual claim.  *See, e.g.*, *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012).  And typically, "unjust enrichment is treated as a contract claim by the State of Nevada," *Ignite Spirits, Inc. v. Consulting by AR, LLC*, 2022 WL 993985, at *4 (D. Nev. Jan. 24, 2022), including for purposes of calculating the statute of limitations, *In re Amerco Derivative Litigation*, 252 P.3d 681, 703 (Nev. 2011) (confirming four year statute of limitations under NRS 11.190(2)(c) applies to unjust enrichment claim); *see also Gunn v. Wild*, 2017 WL 11611041, at *7 (D. Nev. June 15, 2017) (holding unjust enrichment claim "sound[ed] in contract").  Plaintiff's unjust enrichment claim plainly sounds in contract, not tort: he alleges that he was too incapacitated to have formed a valid contract and cannot be held responsible for the credit he requested, and received, from MGM Grand.  While Defendants dispute Plaintiff's claim in its entirety, the important point here is that the unjust enrichment claim is premised on Plaintiff's assertion that he did not form a valid contract, not on some claimed tort allegedly committed by Defendants.  Therefore, even if he could show that he was too intoxicated to have formed a contract, timely disclaimed the contract, and did not ratify it, and that Defendants were unjustly enriched as a result, he still could not seek punitive damages because the claim sounds in contract.[1]  *Road & Highway Builders*, 284 P.3d at 393.

Plaintiff appears to suggest that he can seek punitive damages for *any* claim so long as he can set out allegations that would show, by clear and convincing evidence, malice, oppression, or

---

[1] Plaintiff's gaming activities and use of credit while purportedly intoxicated and/or impaired cannot serve as the basis for an award of punitive damages against Defendants.  The reason for that is straightforward: any issue involving a licensee permitting a patron who is "visibly impaired by alcohol or any other drug to participate in a gaming activity"—as well as any related discipline— would fall under the exclusive purview of the Nevada Gaming Control Board (the "NVGCB").  *See* Nev. Gam. Comm'n Reg. 5.011; *Fleeger v. Bell*, 23 F. App'x 741, 743 (9th Cir. 2001) (stating that violations of Nevada's gaming regulations are enforced through administrative channels, not private causes of action).

fraud. But that is incorrect. A recent Nevada Supreme Court decision, published after Defendants filed the instant Motion, illustrates this point. In *LV.NET LLC v. Cheetah Wireless Technologies, Inc.*, the trial court found for plaintiff Cheetah on seven claims: (1) breach of contract, (2) contractual breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, (4) conversion, (5) breach of fiduciary duty, (6) tortious breach of the implied covenant, and (7) fraud. 2026 WL 1905764, at *2 (Nev. July 1, 2026). The court also entered an award of punitive damages. *Id.* On appeal, the Nevada Supreme Court found that there was insufficient evidence to support the claim of tortious breach, but otherwise left the trial court's liability rulings intact. *Id.* at *3–4. And the Nevada Supreme Court held that the punitive award was inappropriate because, after it had decided the trial court erred in finding a tortious breach, "fraud remains the only claim that could support the district court's punitive damages award." *Id.* at *5. Because the trial court "failed to award underlying compensatory damages on the fraud claim" the punitive damages award could not stand. *Id.* In short, the mere fact that a party prevails on a claim, or multiple claims, does not mean that party is entitled to seek or receive punitive damages.

Because Plaintiff has no claims remaining in the case that would support a punitive damages award *even if he prevailed*, he cannot be allowed to seek punitive damages at trial and his claim for punitive damages should be stricken.

### C.    Plaintiff Cannot Satisfy NRS 42.007

Even if Plaintiff could assert a claim that would theoretically support punitive damages, he cannot seek punitive damages against Defendants because he cannot satisfy NRS 42.007. Plaintiff attempts to elide this fundamental point with a laundry list of allegations that, he says, would support punitive damages. But he fails to show that *any* fraudulent, malicious, or oppressive conduct can be imputed to Defendants.

To be entitled to punitives, Plaintiff must show malice, oppression, or fraud by clear and convincing evidence. NRS 42.005(1). Plaintiff does not allege fraud, so he must first establish that an employee of Defendants engaged in "despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person" or "conduct which is intended to injure a person." *Bongiovi v. Sullivan*, 138 P.3d 433, 451 (Nev. 2006) (citations omitted). If he

can do so, he must then show that such despicable or injurious conduct is attributable to one or both Defendants under NRS 42.007.  Plaintiff cannot do so.

*First*, as to the alleged drugging, this Court granted Defendants' summary judgment motion on Plaintiff's drugging theories other than his allegation that Ms. Koch put ketamine in his drink.  *See* Dkt. No. 234.  Plaintiff does not argue (nor could he) that Defendants employed Ms. Koch despite "advance knowledge that the employee was unfit for the purposes of the employment."  NRS 42.007(a).  Nor does he argue that Ms. Koch herself was a managing agent of either Defendant, or that an officer, director, or managing agent of Defendants "expressly authorized" Ms. Koch to spike Plaintiff's drink.  *Id.* 42.007(b).  Instead, he appears to suggest that Defendants ratified Ms. Koch's alleged drugging.  But he cites no evidence that Ms. Reboton (or Mr. Manacher for that matter) was an "officer, director or managing agent of [either Defendant] who was expressly authorized to direct or ratify the employee's conduct," as required by NRS 42.007.  He also fails to point to any specific act that would even remotely be considered an express ratification.  Indeed, it is entirely unclear from the Opposition what act or acts Plaintiff contends would have ratified the supposed drugging.  There is no basis to suggest that either Defendant ratified any tortious conduct by Ms. Koch.  What's more, even assuming—*arguendo*—that Ms. Koch intentionally drugged Plaintiff (which, as established by the record in this case, she did not), there is simply no evidence that ***anyone*** else would have been aware of that alleged fact—including Mr. Manacher and Ms. Reboton.  For this reason alone, punitive damages are ***not*** awardable to Plaintiff.

*Second*, Plaintiff appears to argue that a variety of other allegations, other than the supposed drugging, could support an award of punitive damages.  But Plaintiff makes no attempt to explain how any of those other alleged acts would constitute either oppression or malice, much less how they could be attributed to Defendants.  To take just a couple of examples, Plaintiff provides no support for the idea that Ms. Koch's supposed failure to make drinks in conformance with the Bartender's Union guidelines, Dkt. No. 248 at 11:2–7, or Ms. Reboton's supposed "fail[ure] to see the obvious with respect to Manley's incapacitation," *id.* at 14:13–17, rise to the level of either "despicable conduct that subjects a person to cruel and unjust hardship with

conscious disregard of the rights of the person" or "conduct which is intended to injure a person." *Bongiovi*, 138 P.3d at 451 (citations omitted). Indeed, any argument concerning Ms. Reboton's (or any other employee for that matter) knowledge of Plaintiff's purported condition would be explained by his voluntary consumption of alcohol on the date in question. The Court has already concluded that Defendants had "no duty to stop serving Manley alcohol once he had become visibly 'erratic.'" Dkt. No. 28 at 5:5–12. Just as the foregoing cannot serve as a basis for liability in this matter, it cannot provide the basis for Plaintiff's punitive damages request.

Plaintiff's only attempt to connect *any* of those allegations to either Defendant is his argument that Mr. Manacher was a managing agent of one Defendant (MGM Resorts International), and he ratified the actions of Ms. Reboton. But the only action Plaintiff points to that Mr. Manacher supposedly ratified was the issuance of additional credit to Plaintiff. Dkt. No. 248 at 14:9–12. Plaintiff yet again provides no legal support for the idea that issuing credit to a gaming patron, even one who has consumed alcohol, is "despicable conduct" or "intended to injure" the patron. Nor does Plaintiff explain how the issuing of a credit instrument is tortious; it plainly relates to the contract and therefore would not support a punitive award as a matter of law.

*Third*, and finally, Plaintiff relies heavily on *Countrywide*, but that case is easily distinguishable. It involved an experienced "asset manager" who proceeded with a foreclosure despite admittedly reviewing numerous documents that showed the unit being foreclosed on was *not* in arrears, and being told, directly, and on two separate occasions, that the wrong unit was being foreclosed upon. *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 255 (Nev. 2008). And the asset manager qualified as a managing agent because she "possessed the discretion to create and implement policies with respect to the properties in her own portfolio, which included the Thitcheners' condominium unit." *Id.* at 258. Here, as noted, Plaintiff cannot even identify any conduct, other than the supposed drugging, that would justify punitive damages at all; cannot establish ratification by an officer, director and managing agent; and cannot show anything like the "red flags" present in *Countrywide*.

## III.   CONCLUSION

For the reasons set forth above, and in the Motion, Defendants respectfully request that the Court strike the request for punitive damages and preclude Plaintiff from seeking a punitive award at trial.

DATED this 20th day of July, 2026.

SEMENZA RICKARD LAW


*/s/ Lawrence J. Semenza, III*

Lawrence J. Semenza, III, Esq. (Bar No. 7174)
Katie L. Cannata, Esq. (Bar No. 14848)
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

MUNGER, TOLLES & OLSON LLP
Bethany Woodard Kristovich, Esq. (*pro hac vice*)
John Schwab, Esq. (*pro hac vice*)
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426

*Attorneys for Defendant MGM Resorts International & Defendant/Counterclaimant MGM Grand Hotel, LLC*

## CERTIFICATE OF SERVICE

I am employed by the law firm of Semenza Rickard Law in Clark County, Nevada.  I am over the age of 18 and not a party to this action.  The business address is 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145.

I hereby certify that on the 20th day of July 2026, I served the document(s), described as:

**REPLY IN SUPPORT OF MOTION TO STRIKE PLAINTIFF DWIGHT MANLEY'S PUNITIVE DAMAGES REQUEST AND/OR TO PRECLUDE PLAINTIFF FROM SEEKING PUNITIVE DAMAGES AT THE TIME OF TRIAL**

☒    by placing the ☐ original ☒ a true copy thereof enclosed/attached and delivered:

☒  a.  via **ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

**PRHLAW LLC**
Charles H. McCrea, charles@prhlawllc.com, tlc@hmlawlv.com
Paul R. Hejmanowski, paul@prhlawllc.com, tc@hmlawlv.com
-
**MADEL PA**
Christopher W. Madel, Esq. (*pro hac vice*), cmadel@madellaw.com
Jennifer M. Robbins, Esq. (*pro hac vice*), jmrobbins@madellaw.com,
6815994420@filings.docketbird.com, madelpafile@madellaw.com
*Attorneys for Plaintiff*

☐ b.    **BY U.S. MAIL.** I deposited such envelope in the mail at Las Vegas, Nevada. The envelope(s) were mailed with postage thereon fully prepaid. I am readily familiar with Semenza Rickard Law's practice of collection and processing correspondence for mailing. Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at Las Vegas, Nevada in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

☐ c.  **BY PERSONAL SERVICE.**

☐ d.  **BY DIRECT EMAIL**

☐ e.  **BY FACSIMILE TRANSMISSION.**

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Olivia A. Kelly*
An Employee of Semenza Rickard Law